UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NICHOLAS J. FIORILLO, TRACY KROWEL, ROBERT DEPIETRI, JR., KIMBERLY DEPIETRI, SHREWSBURY STREET DEVELOPMENT COMPANY and ERIE AVENUE RESIDENTIAL REALTY TRUST <br><br> Plaintiffs, <br><br> v. <br><br> DAVID G. MASSAD, PAMELA MASSAD, MARCELLO MALLEGNI, MICHAEL NORRIS COMMERCE BANK AND TRUST COMPANY GAMEWELL REALTY, INC., LBM FINANCIAL, INC. AND WOLFPEN FINANCIAL, LLC <br><br> Defendants. | Civil Action No. 07-40015-FDS |

**DEFENDANT DAVID G. MASSAD, PAMELA A. MASSAD AND GAMEWELL
REALTY, INC.'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS
DIRECTED TO SHREWSBURY STREET DEVELOPMENT COMPANY**

Pursuant to Federal Rules of Civil Procedure 26 and 34, Defendants David

Massad, Pamela Massad and Gamewell Realty, Inc. ("Defendants") hereby requests that

Plaintiff Shrewsbury Street Development Company ("SSDC") produce for inspection and

copying the documents requested below. The production of documents requested herein

shall take place at the offices of Plaintiff's counsel, Todd & Weld LLP, 28 State Street,

31st Floor, Boston, Massachusetts 02109 within thirty (30) days after service of this

request.

**INSTRUCTIONS**

1.      Defendants expressly incorporates herein the provisions of Fed. R. Civ. P.
26(b)(5) and 34(b).

2.      In producing documents in response to this request, SSDC is required to furnish all documents, including electronic media, in its possession, custody or control that are known or available to him regardless of whether those documents are possessed by SSDC, or by any agent, attorney, representative, affiliate or employee.  SSDC must make a diligent search of its records and of other papers and materials in its possession or available to it or its attorneys or other representatives.

3.      When responding to this request for production of documents, SSDC is requested to respond in writing and state as to each of the requests:

(a)      that there are documents responsive to the request, and that they will be produced;

(b)      that there are documents responsive to the request, but that SSDC refuses to produce them because of a claim of privilege or for some other reason; or

(c)      that there are no documents responsive to the request.

4.      In the event that SSDC objects to any request set forth below on the basis of a contention that it is overbroad for any reason, please respond to that request as narrowed in such a way as to render it not overbroad and state the extent SSDC has narrowed that request for purposes of the response.

5.      In producing documents pursuant to this request, please indicate to which numbered request such document is responsive.  If a document or any other item is produced pursuant to more than one request, please so designate.

6.      The following rules of construction apply to each of these discovery requests:

(a)      The terms "all" and "each" shall be construed as "all and each";

(b)      The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope; and

(c)      The use of the singular form of any word includes the plural and vice versa.

(d)      These requests are to be construed broadly, and construction of their terms should be inclusive and in favor of providing an affirmative response.

7.      If any portion of any of these requests is objected to, the remaining nonobjectionable portions are to be responded to fully and completely.

8.    No document shall be withheld from discovery based on any claim or belief by you that such document already is in the possession of Plaintiff.

9.    Objections: If an objection is made to producing any of the documents requested on the grounds of attorney/client privilege, work product protection, or on any other basis, and such documents are withheld from production, please identify each such documents so withheld by:

 (a)    the author, originator, or addresser;

 (b)    the addressees;

 (c)    all recipients of copies;

 (d)    the date the document was prepared;

 (e)    the nature of the document (i.e. letter, note, report, memorandum, etc.);

 (f)    the present custodian and location of the document; and

 (g)    a statement of the factual and legal reason(s) why the document is being withheld from production.

10.    Unavailability of Document: If you decline or are unable to produce a document on the ground that the document or any of its contents is no longer in existence, has been destroyed, or is otherwise unavailable, please provide the following information as to each such document:

 (a)    the name of its author, originator, or addresser;

 (b)    the name of each person to whom the original or a copy was addressed or delivered;

 (c)    the name of each person known or reasonably believed by you to have present possession, custody, or control of the original and each copy thereof;

 (d)    its date; and

 (e)    a description of the circumstances causing or surrounding the destruction, loss or other unavailability of the document, including a description of the disposition made of each copy of the document, by whom it was made, the date or approximate date on which such disposition was made, and why such disposition was made.

11.    If no documents exist which are responsive to a request, please state that no documents exist.

12.    A request for a document shall be deemed to include a request for any and all transmittal sheets, cover letters, exhibits, enclosures, or attachments to the document, in addition to the document itself.

13.    These requests are continuing in nature and require supplemental response and production.

14.    Electronic emails and all documents originally generated in electronic form or maintained in electronic form should be produced in their native, electronic format, with search capabilities to the extent such capabilities are available.

## DEFINITIONS

As used herein, the words and phrases set out below shall have the following meanings:

1.    The term "Mr. Fiorillo" or "Nicholas Fiorillo" or "Fiorillo" means collectively Nicholas Fiorillo, any agent, representative, employee or corporate or legal entity for which Mr. Fiorillo possesses any interest.

2.    The term "Mr. Depietri" or "Robert Depietri" or "Depietri" means collectively Robert Depietri, any agent, representative, employee or corporate or legal entity for which Mr. Depietri possesses any interest.

3.    The term "Mrs. Depietri" means collectively Kimberly Depietri, any agent, representative, employee or corporate or legal entity for which Kimberly Depietri possesses any interest.

4.    The term "Ms. Krowel" means collectively Tracey Krowel, any agent, representative, employee or corporate or legal entity for which Ms. Krowel possesses any interest.

5.    The term "David Massad" means collectively David Massad, any agent, representative, employee or corporate or legal entity for which Mr. Massad possesses any interest.

6.    The term "Pamela Massad" means collectively Pamela Massad, any agent, representative, employee or corporate or legal entity for which Pamela Massad possesses any interest.

7.    The term "Mr. Mallegni" or "Marcello Mallegni" or "Mallegni" means collectively Marcello Mallegni, any agent, representative, employee or corporate or legal entity for which Marcello Mallegni possesses any interest

8.     The term "Mr. Norris" or "Michael Norris" or "Norris" means collectively Michael Norris, any agent, representative, employee or corporate or legal entity for which Michael Norris possesses any interest

9.     For each corporate or legal entity listed below, the reference to that corporate entity shall mean collectively that particular corporate or legal entity or any agent, representative, employee, accountant or attorney for that particular corporate or legal entity.

10.     The term "Document" and "Communication" expressly includes all emails, instant messages, text messages, voicemails, and other electronically stored information in its native, searchable form.

11.     A "representative" of a person means any officer, director, agent, employee, attorney, or other representative of such person.

12.     "You" and "your" shall mean or apply to Plaintiff Shrewsbury Street Development Company, its agents, affiliates, owners, managers, officers, directors, employees and agents.

13.     "Amended Complaint" shall mean the Amended Complaint filed in this matter by the Plaintiffs and dated November 20, 2007 (Docket No. 29).

## REQUESTS

1.     All documents which reflect Pamela Massad's participation or involvement in a criminal conspiracy.

2.     All documents which reflect Gamewell Realty's participation or involvement in a criminal conspiracy.

3.     All documents which reflect David Massad's participation or involvement in a criminal conspiracy.

4.     All documents which prove or evidence the existence of an association-in-fact RICO enterprise as alleged in the Amended Complaint.

5.     All corporate, formational and other documents reflecting the ownership structure of any of the following entities:

- 219 Forest Street Realty Trust
- 219 Forest Street, LLC
- 201 Forest Street Realty Trust
- 201 Forest Street, LLC
- Old Centre Village Realty Trust
- Lyman Development, LLC
- Lyman Development Realty Trust

- 230 Maple Street LLC
- 230 Maple Street Realty Trust
- 57 East Main Street, LLC
- 57 East Main Street Realty Trust
- 65 Boston Post Road Realty Trust
- 65 BPW LLC

This request, includes, but is not limited to declaration of trusts, operating agreements, documents reflecting ownership or beneficial interests in the entity or trust.

6.  For the time period 2000 to the present, the corporate tax returns for each of the entities identified above. This request includes, but is not limited to all tax filings, forms, schedules and supplementary information.

7.  For the time period 2000 to the present, the corporate tax returns for Shrewsbury Street Development Corporation. This request includes, but is not limited to all tax filings, forms, schedules and supplementary information,

8.  For the time period 2000 to the present, the corporate tax returns for Erie Avenue Residential Realty Trust. This request includes, but is not limited to all tax filings, forms, schedules and supplementary information.

9.  For the time period 2000 to the present, all federal and state tax returns of Nicholas Fiorillo. This request includes, but is not limited to all tax filings, forms, schedules and supplementary information.

10. For the time period 2000 to the present, all federal and state tax returns of Robert Depietri. This request includes, but is not limited to all tax filings, forms, schedules and supplementary information.

11. For the time period 2000 to the present, all federal and state tax returns of Tracey Krowel. This request includes, but is not limited to all tax filings, forms, schedules and supplementary information.

12. For the time period 2000 to the present, all federal and state tax returns of Kimberly Depietri. This request includes, but is not limited to all tax filings, forms, schedules and supplementary information.

13. For the time period 2000 to the present, documents sufficient to identify any accountant who has performed services on your behalf.

14. All documents reflecting any damages you allege to have suffered in this case.

15. All documents reflecting any acts of mail or wire fraud which you contend were committed against you by Pamela Massad, David Massad or Gamewell Realty.

16. All documents reflecting any acts of bank fraud which you contend were committed against you by Pamela Massad, David Massad or Gamewell Realty.

17. All documents reflecting any acts of bankruptcy fraud which you contend were committed against you by Pamela Massad, David Massad or Gamewell Realty.

18. All documents reflecting any acts of money laundering which you contend were committed against you by Pamela Massad, David Massad or Gamewell Realty.

19. All documents reflecting any acts of obstruction of justice which you contend were committed against you by Pamela Massad, David Massad or Gamewell Realty.

20. All documents reflecting any acts of loan sharking which you contend were committed against you by Pamela Massad, David Massad or Gamewell Realty.

21. All documents reflecting any acts of extortion which you contend were committed against you by Pamela Massad, David Massad or Gamewell Realty.

22. All documents reflecting any violation of the Fair Housing Act which you contend were committed against you by Pamela Massad, David Massad or Gamewell Realty.

23. All documents reflecting any violation of the Truth in Lending Act which you contend were committed against you by Pamela Massad, David Massad or Gamewell Realty.

24. All documents reflecting any violation of the Real Estate Settlement Procedures Act which you contend were committed against you by Pamela Massad, David Massad or Gamewell Realty.

25. All documents reflecting any violation of the Equal Credit Opportunity Act which you contend were committed against you by Pamela Massad, David Massad or Gamewell Realty.

26. All documents reflecting any acts of mail or wire fraud which you contend were committed against you by any party to this lawsuit.

27. All documents reflecting any acts of bank fraud which you contend were committed against you by any party to this lawsuit.

28. All documents reflecting any acts of bankruptcy fraud which you contend were committed against you by any party to this lawsuit.

29. All documents reflecting any acts of money laundering which you contend were committed against you by any party to this lawsuit.

30. All documents reflecting any acts of obstruction of justice which you contend were committed against you by any party to this lawsuit.

31. All documents reflecting any acts of loan sharking which you contend were committed against you by any party to this lawsuit.

32. All documents reflecting any acts of extortion which you contend were committed against you by any party to this lawsuit.

33. All documents reflecting any violation of the Fair Housing Act which you contend were committed against you by any party to this lawsuit.

34. All documents reflecting any violation of the Truth in Lending Act which you contend were committed against you by any party to this lawsuit.

35. All documents reflecting any violation of the Real Estate Settlement Procedures Act which you contend were committed against you by any party to this lawsuit.

36. All documents reflecting any violation of the Equal Credit Opportunity Act which you contend were committed against you by any party to this lawsuit.

37. All documents memorializing any threats made by any of the Defendants at any time.

38. All documents reflecting Nicholas Fiorillo, individually, as a borrower of any loan made by any of the Defendants in this case.

39. All documents reflecting Robert Depietri, individually, as a borrower of any loan made by any of the Defendants in this case.

40. All documents reflecting Tracey Krowel, individually, as a borrower of any loan made by any of the Defendants in this case.

41. All documents reflecting Kimberly Depietri, individually, as a borrower of any loan made by any of the Defendants in this case.

42. All documents reflecting Erie Avenue Residential Realty Trust, as a borrower of any loan made by any of the Defendants in this case.

43. All documents reflecting Shrewsbury Street Development Company as a borrower of any loan made by any of the Defendants in this case.

44. All documents relating to any proposed, contemplated or actual financing arrangement relative to 267 Shrewsbury Street, Worcester, MA.

45. All documents relating to any proposed, contemplated or actual development of 267 Shrewsbury Street, Worcester, MA.

46. All documents reflecting any contracts, agreement or understandings relative to 267 Shrewsbury Street.

47. All documents relating to the provision of a deposit for 267 Shrewsbury Street as alleged in paragraph 47 of the Amended Complaint.

48. Any and all commitment letters, term sheets, promissory notes, mortgages, guarantees, settlement statements or loan agreements relative to 267 Shrewsbury Street.

49. All documents reflecting the $600,000 offer to purchase the Airline Lewis property referenced in Paragraph 54 of the Amended Complaint.

50. All documents reflecting any loan payoff calculations provided by Pamela Massad, David Massad or Gamewell Realty relating to 267 Shrewsbury Street.

51. All documents reflecting any loan payoff calculations provided by Pamela Massad, David Massad or Gamewell Realty relating to any property or loan referenced in the Amended Complaint.

52. All documents reflecting any loan payoff calculations provided by any defendant relating to any property or loan referenced in the Amended Complaint.

53. All documents reflecting the $800,000 offer to purchase the Airline Lewis property referenced in Paragraph 55 of the Amended Complaint.

54. All documents reflecting the $760,000 offer to purchase the Airline Lewis property referenced in Paragraph 56 of the Amended Complaint.

55. All documents reflecting any communications with "a national fitness center" relative to the Airline Lewis Building as referenced in Paragraph 58 of the Amended Complaint.

56. All documents reflecting any communications with Universal Architects or CFS Engineering relative to the Airline Lewis Building as referenced in Paragraph 58 of the Amended Complaint.

57. All documents reflecting any negotiations with an adjacent landowner relative to the Airline Lewis Building as referenced in Paragraph 58 of the Amended Complaint.

58. All documents reflecting the expenditure of any monies relative to the development of the Airline Lewis property.

59. All documents reflecting the "other outstanding loans with [ ] various other lending companies" as referenced in Paragraph 61 of the Amended Complaint. This request includes, but is not limited to promissory notes, mortgages, security agreements, demand letters, term sheets, commitment letters and other documents relating to the loan.

60. All documents reflecting any lawsuits or legal proceedings relative to 267 Shrewsbury Street. This request includes, but is not limited to complaints, answers, discovery responses, motions, deposition transcripts, court pleadings, settlement agreements and judgments or dismissal papers.

61. All documents relating to the 219 Forest Street loan between Wolfpen and 219 Forest as alleged in the Amended Complaint.

62. All documents reflecting the $200,000 personal loan made by Depietri to 219 Forest as alleged in paragraph 63 of the Amended Complaint.

63. All documents which demonstrate any ownership interest held by you in 219 Forest Street, LLC or 219 Forest Street Realty Trust.

64. All documents reflecting any actual, proposed or contemplated loan agreement concerning 219 Forest. This request includes, but is not limited to loan agreements, promissory notes, mortgages, guarantees, settlement statements, security agreements, term sheets, commitment letters or other documents reflecting any loan terms.

65. All documents reflecting the personal payment of funds to any of the Defendants for any reason.

66. All documents reflecting the personal investment of funds into any of the legal entities referenced in the Amended Complaint.

67. All documents reflecting the personal payment of $202,271 by Depietri to LBM Financial as referenced in paragraph 69 of the Amended Complaint.

68. All documents reflecting the commitment provided to Depietri by First Essex Bank as referenced in paragraph 71 of the Amended Complaint.

69. All documents which demonstrate that Massad directed Mallegni to refuse to the First Essex Bank proposal as alleged at paragraph 72 of the Amended Complaint.

70. All documents reflecting the "withdrawal" by Commerce Bank of the loan commitment as alleged in paragraph 73 of the Amended Complaint.

71.    All documents received from Commerce Bank or provided to Commerce Bank relative to 219 Forest at any time.

72.    All documents reflecting the payment by 219 Forest of any outstanding loans referenced in the Amended Complaint.

73.    All documents which substantiate the fact that Mallegni "instructed defendant Norris to break his lease with the Boston Post Road Trust and move into an office building owned by Mallegni" as alleged in paragraph 78 of the Amended Complaint.

74.    All documents reflecting the January 28, 2004 letter from Mallegni and LBM Financial to 219 Forest as referenced in paragraph 79 of the Amended Complaint.

75.    The January 30, 2004 letter referenced in paragraph 80 of the Amended Complaint.

76.    All documents which reflect the fact that Mr. Norris "breached his lease" as alleged in paragraph 81 of the Amended Complaint. This request includes, but is not limited to a copy of the lease and any amendments and any notices concerning defaults under the lease.

77.    All documents which reflect defendant Mallegni and LBM Financial assessing the December note a default rate of 20% plus interest plus one point per month as alleged in paragraph 82 of the Amended Complaint. This request includes, but is not limited to, a copy of the December note, any demand notices, any accountings and any documents reflecting the charging of interest.

78.    All documents which reflect the "financing commitments" obtained by Depietri as alleged in paragraph 83 of the Amended Complaint.

79.    All documents which reflect "approximately $5,000,000 of pre-sales of the condominiums" as alleged in paragraph 83 of the Amended Complaint. This request includes, but is not limited to, copies of any purchase and sale agreements, offers to purchase, copies of deposit checks and any other evidence identifying pre-sales.

80.    All documents reflecting any requests for confirmation of payoff amounts due under any of the loans at issue in the Amended Complaint.

81.    All documents reflecting responses by any of the defendants to requests for confirmation of payoff amounts for any loan at issue in the Amended Complaint.

82.    All documents which reflect the refusal by any defendant to provide confirmation of any payoff amount for any loan at issue in the Amended Complaint.

83.  All documents reflecting the pledge by Mallengi of "the December Notes and mortgages on 219 Forest and 201 Forest to DanversBank as collateral for an obligation of LBM Financial relating to property in Manchester, New Hampshire in which defendants Mallegni and Massad held an interest" as alleged in paragraph 88 of the Amended Complaint.

84.  All documents which identify the "property in Manchester, New Hampshire" referenced in paragraph 88 of the Amended Complaint and all documents which demonstrate that Massad "held an interest" in this property.

85.  All documents which demonstrate that Mallegni did not have authority from investors to "pledge the December note to DanversBank" as alleged in paragraph 88 of the Amended Complaint.

86.  All documents which confirm that Mallegni did not inform DanversBank of the matters listed in paragraph 88 of the Amended Complaint.

87.  The loan participation agreement referenced in paragraph 88 of the Amended Complaint.

88.  All documents which reflect DanversBank assigning the December Note and Mortgage back to LBM in exchange for a second mortgage on 171 Locke Drive as alleged in paragraph 89 of the Amended Complaint.

89.  All documents reflecting the February 20, 2007 demand notices and the April 18, 2007 Notice of Intent to foreclose referenced in paragraph 90 of the Amended Complaint.

90.  All documents reflecting the purchase and sale agreement between 219 Forest and Forekicks II as alleged in paragraph 91 of the Amended Complaint.

91.  All documents which reflect Mallegni and Norris contacting representatives of Forekicks II and discouraging them from purchasing the property as alleged in paragraph 91 of the Amended Complaint.

92.  All documents reflecting "two other financing commitments" referenced in paragraph 93 of the Amended Complaint.

93.  Any and all calculations which demonstrate that LBM charged usurious and fraudulently inflated interest payments for any of the loan identified in the Amended Complaint.

94.  All documents relating to 249 Lincoln Street.

95.   All documents relating to the loan pertaining to 249 Lincoln Street, Worcester. This request includes any term sheet, commitment letter, promissory note, mortgages, loan agreements.

96.   All documents relating the $20,000 in deposits and soft money invested in 249 Lincoln Street property as alleged in paragraph 99 of the Amended Complaint. This request includes, but is not limited to cancelled checks, invoices, purchase and sale agreements, and bills.

97.   All documents reflecting communications between yourself and the sellers of 249 Lincoln Street identified in paragraph 99 of the Amended Complaint.

98.   All documents relating to the granting to Marcello Mallegni of a 25% ownership interest in the building located at 157 Shrewsbury Street.

99.   All documents reflecting the repayment of any monies to LBM Financial relating to the May 3, 2005 $550,000 loan referenced in paragraph 100 of the Amended Complaint.

100.  All documents which substantiate the "loan to refinance 249 Lincoln Street" as alleged in paragraph 102 of the Amended Complaint. This request includes, but is not limited to, any term sheets, letters of intent or commitment letters.

101.  All documents which reflect communications between yourself and any of the defendants relating to the 249 Lincoln Street loan. This request includes, but is not limited to notices of default, notices of intent to foreclose, demands to payoff figures and payoff amounts.

102.  All documents which substantiate the claim that the loan calculation for the 249 Lincoln Street loan is "fraudulently inflated" as alleged at paragraph 106 of the Amended Complaint.

103.  All documents reflecting any efforts by Chase Building Associates II Limited Partnership to refinance its mortgage on the commercial property located at 44 Front Street, Worcester, Massachusetts.

104.  The Commerce Bank loan commitment identified at Paragraph 108 of the Amended Complaint.

105.  The HUD-1 Settlement Statement referenced in paragraph 110 of the Amended Complaint.

106.  All documents reflecting the rewriting of the "CBA loan" as alleged in paragraph 111 of the Amended Complaint.

107. All documents relating to the Old Centre Village Realty Trust loan as alleged at paragraph 112 of the Amended Complaint. This request includes, but is not limited to, a term sheet, commitment letter, loan agreement, promissory notes, mortgages, settlement statements and guarantees.

108. All documents relating to the securing of permits by Old Centre Village Realty Trust as alleged at paragraph 113 of the Amended Complaint.

109. The "settlement statement" referenced at paragraph 114 of the Amended Complaint.

110. Any "settlement statement" or HUD settlement statement which you contend contains improper, fraudulent, illegal or untruthful entries.

111. All documents which substantiate the fact that "Old Centre Village Trust paid defendant LBM Financial over $94,000 in fraudulent and usurious interest charges" as alleged in paragraph 117 of the Amended Complaint. This request includes, but is not limited to, all accountings, any documents which reflect this calculation, any documents which provide an accurate accounting and all documents reflecting communications between the parties reflecting the payoff figures.

112. All documents concerning the Lyman Development Loan as alleged at paragraph 119 of the Amended Complaint. This request includes, but is not limited to term sheets, commitment letters, promissory notes, settlement statements, guarantees, mortgages, loan agreements and communications between the parties concerning the loan.

113. All documents concerning the first mortgage in place on August 16, 2001 at 44 Lyman Street, Northborough, MA. This request includes but is not limited to any promissory notes securing the mortgage, the mortgage, any guarantees between the first mortgage holder and any obligor and any communications between the first mortgage holder and Lyman Development.

114. All documents relating to the lawsuit referenced at paragraph 121 of the Amended Complaint. This request includes, but is not limited to pleadings, deposition transcripts, the complaint, any settlement agreement, interrogatory answers and any sworn statements made in connection with the lawsuit.

115. All documents which substantiate the fact that Lyman Development paid defendant LBM Financial $164,321.97 in fraudulently inflated interest" as alleged in paragraph 126 of the Amended Complaint. This request includes, but is not limited to, all accountings, any documents which reflect this calculation, any documents which provide an accurate accounting and all documents reflecting communications between the parties reflecting the payoff figures.

116.   All documents relating to the 230 Maple Street loans referenced in paragraph 132 of the Amended Complaint. This request includes, but is not limited all documents relating to the Milford National Bank loan documents as well as the LBM Financial loan documents. These request includes, but is not limited to, term sheets, commitment letters, promissory notes, guarantees, mortgages, loan agreements, settlement statements and communications between the lenders and the borrower.

117.   All documents relating to the "pending sale of the property" referenced in paragraph 134 of the Amended Complaint.

118.   All documents which substantiate the fact that 230 Maple Street Trust was required to pay "fraudulently inflated interest charges" as alleged in paragraph 135 of the Amended Complaint. This request includes, but is not limited to, all accountings, any documents which reflect this calculation, any documents which provide an accurate accounting and all documents reflecting communications between the parties reflecting the payoff figures.

119.   All documents relating to the sale by 230 Maple Street Trust to Bluefin Properties. This request includes, but is not any purchase and sale agreement and any settlement statement or other closing document.

120.   The March 31, 2004 letter referenced at paragraph 140 of the Amended Complaint.

121.   All documents relating to the 88 Shrewsbury Street loan referenced at paragraph 141 of the Amended Complaint.

122.   All documents relating to Shrewsbury Street Investment LLC.

123.   All documents reflecting the payment of monies by 88 Shrewsbury Street Investment LLC to LBM Financial as alleged in paragraph 145 of the Amended Complaint.

124.   All documents relating to the sale of 88 Shrewsbury Street. This request includes, but is not limited to settlement statements, any purchase and sale agreement or other closing document.

125.   The purchase and sale agreement to purchase the former Manzi's Funeral Home and four adjacent parcels of land located at 175-181 Shrewsbury Street, Worcester, MA for $1.2 million" as alleged at paragraph 148 of the Amended Complaint.

126.   All documents reflecting the "commitment" for $1,500,000 from defendant LBM Financial as alleged at paragraph 150 of the Amended Complaint.

127.  All documents reflecting Fiorillo's assignment of his ownership interest in the Manzi parcels to Mallegni and Massad as alleged at paragraph 150 of the Amended Complaint.

128.  All documents which would substantiate the fact that Fiorillo owns any interest in Shrewsbury Street General Investment LLC.

129.  All documents reflecting any investment made by any of the Plaintiffs in Shrewsbury Street General Investment LLC.

130.  All documents reflecting any "public statement" that Fiorillo was a 50% partner in the project.

131.  All documents reflecting the substantial investment of "time and money in preparing the development plans for a 38,000 square foot mixed use retail/office/condo project that fully capitalized on the site" as alleged at paragraph 156 of the Amended Complaint.  This request includes, but is not limited to cancelled checks, invoices, bills or any material substantiating the work and investment of money.

132.  All documents which substantiate the fact that the "proposed development project" referenced in paragraph 156 of the Amended Complaint "had a projected 'as finished' value of over $12 million."  This request includes, but is not limited to appraisals, pro forms and valuations.

133.  All documents reflecting the listing for sale of one of the "Manzi parcels" for a sale price of $2.2 million as alleged at paragraph 158 of Amended Complaint.

134.  All documents reflecting the actual sale of any of the "Manzi parcels" as that term is used in the Amended Complaint at any time.

135.  All documents reflecting the 157 Shrewsbury Street loan as alleged in paragraphs 165 of the Amended Complaint.  This request includes any promissory notes, commitment letters, term sheets, settlement statements, mortgages, loan agreements or guarantees.

136.  All documents reflecting the repayment of any loan made by LBM Financial relating to 157 Shrewsbury Street.

137.  All documents reflecting any interaction with Commerce Bank relative to any possible loan for 157 Shrewsbury Street.

138.  All documents relating to 157 Shrewsbury Street, Worcester.  This request includes any purchase and sale agreements, any documents reflecting any down payments or deposits, any documents reflecting the expenditure of any monies.

139.   All documents relating to any financing commitment or other documentation relating to Webster First Federal Credit Union as alleged in paragraph 167 of the Amended Complaint.

140.   The pay-off letter referenced in paragraph 168 of the Amended Complaint.

141.   All documents which substantiate the fact that LBM Financial sought to charge "$135,000 in fraudulently inflated interest" as alleged in paragraph 168 of the Amended Complaint. This request includes, but is not limited to, all accountings, any documents which reflect this calculation, any documents which provide an accurate accounting and all documents reflecting communications between the parties reflecting the payoff figures.

142.   Please set forth in full and complete detail all documents relating to the Stafford Hill Estates purchase as alleged at paragraphs 170-180 of the Amended Complaint. This request includes, but is not limited to any term sheets, commitment letters, purchase and sale agreements,

143.   All documents reflecting the $50,000 loan referenced at paragraph 170 of the Amended Complaint. This request includes any promissory notes, mortgages, guarantees and any communications with the lender.

144.   All documents reflecting the purchase and sale agreement reflected in paragraph 170 of the Amended Complaint.

145.   All documents submitted to Commerce Bank in connection with the Stafford Hill Estates purchase as alleged in paragraph 171 of the Amended Complaint.

146.   All documents reflecting the purchase and sale agreement with Toll Brothers referenced in paragraph 173.

147.   All communications with the Toll Brothers concerning the Stafford Hill Estates purchase.

148.   All documents reflecting the commitment letter referenced in paragraph 176 of the Amended Complaint.

149.   Any loan participation agreement between Massad and LBM Financial.

150.   Any loan participation agreement between LBM and any of its investors.

151.   All documents which reflect Shrewsbury Street Development Company's corporate existence. This request includes, but is not limited to shareholder meetings, articles of organization, corporate votes, annual reports, stock certificates, bylaws, and any amendments thereto.

152.   All documents which reflect Erie Avenue Residential Realty Trust's legal existence. This request includes, but is not limited to documents reflecting the creation of the trust, and Declaration of Trust, documents reflecting the beneficiaries of the trust at any time and any schedules of beneficiaries created at any time.

153.   All documents relating to the Evergrass loan referenced in paragraph 181 of the Amended Complaint. This request includes but is not limited to term sheets, commitment letters, loan agreements, promissory notes, security agreements, mortgages, guarantees and settlement statements.

154.   All documents which substantiate the writing of a $23,334.36 unauthorized check out of the loan proceeds made payable to Mallegni as alleged in paragraph 183 of the Amended Complaint. Include in your response, any documents which demonstrate that the check was unauthorized.

155.   All documents relating to the Evergrass loan referenced in paragraph 186 of the Amended Complaint. This request includes but is not limited to term sheets, commitment letters, loan agreements, promissory notes, security agreements, mortgages, guarantees and settlement statements.

156.   All documents which substantiate the fact that Evergrass "overpaid defendant LBM Financial approximately $95,000" as alleged in paragraph 187 of the Amended Complaint. This request includes, but is not limited to, all accountings, any documents which reflect this calculation, any documents which provide an accurate accounting and all documents reflecting communications between the parties reflecting the payoff figures.

157.   All documents evidencing payments made by Evergrass to LBM at any time.

158.   All documents reflecting "the substantial deposit that [Depietri] had put down on the property as alleged in paragraph 190 of the Amended Complaint.

159.   All documents relating to the LBM Financial loan to East Main Street Trust referenced at paragraph 191 of the Amended Complaint. The request includes, but is not limited to, any commitment letters, term sheets, promissory notes, settlement statements, guarantees, mortgages, security agreements, loan agreements and all documents reflecting the provision of a 25% non-voting ownership to Mallegni.

160.   All documents reflecting Depietri's $325,000 loan to East Main Street Trust. This request includes all loan documents, all cancelled checks and any documentation memorializing the receipt of these funds by East Main Street Trust.

161.   All documents reflecting any payments made by East Main Street Trust to LBM Financial or Mallegni.

162.   All documents relating to the loan closing referenced in paragraph 193 of the Amended Complaint. The request includes, but is not limited to, any commitment letters, term sheets, promissory notes, settlement statements, guarantees, mortgages, security agreements, loan agreements and all documents reflecting a priority cash flow distribution.

163.   The March 31, 2004 fax referenced in paragraph 197 of the Amended Complaint.

164.   All communications between Depietri and any of the Defendants relating to the 57 East Main Street Realty Trust.

165.   The letters referenced in paragraphs 199-201 of the Amended Complaint.

166.   All documents which substantiate the fact that 57 East Main Street Realty Trust paid "almost $750,000 in usurious and fraudulently inflated interest charges" as alleged in paragraph 202 of the Amended Complaint. This request includes, but is not limited to, all accountings, any documents which reflect this calculation, any documents which provide an accurate accounting and all documents reflecting communications between the parties reflecting the payoff figures.

167.   All documents reflecting the formation of the Erie Avenue Residential Realty Trust.

168.   All documents relating to the Erie Avenue Residential Realty Trust loan referenced at paragraph 206 of the Amended Complaint. The request includes, but is not limited to, any commitment letters, term sheets, promissory notes, settlement statements, guarantees, mortgages, security agreements and loan agreements.

169.   All documents which substantiate the claim that Mallegni instructed LaCourse Construction not to pull the necessary permits for the project as alleged in paragraph 211 of the Amended Complaint.

170.   All documents reflecting communications between yourself and LaCourse Construction relative to any development project or loan referenced in the Amended Complaint.

171.   All documents relating to the real estate construction and development project at 7-21 Erie Avenue, Worcester.

172.   All documents reflecting the "six units under purchase and sale agreements" as alleged in paragraph 212 of the Amended Complaint.

173.   All documents relating to the settlement referenced in paragraph 213 of the Amended Complaint.

174. All documents presented to Marcello Mallegni in connection with the request for discharges as alleged in paragraph 214 of the Amended Complaint.

175. All documents reflecting any agreements between yourself and any of the Defendants relating to Erie Avenue Residential Realty Trust.

176. All documents reflecting the $100,000 loan from Entrust Financial as alleged in paragraph 216 of the Amended Complaint. The request includes, but is not limited to, any commitment letters, term sheets, promissory notes, settlement statements, guarantees, mortgages, security agreements and loan agreements.

177. All documents which substantiate the fact that Mr. Massad was an investor and part owner of Entrust Financial.

178. All materials submitted to Commerce Bank in connection with any attempt to obtain credit, a mortgage or a loan relative to 425B Salisbury Street.

179. All documents relating to the 425B Salisbury Street loan closing referenced in the Amended Complaint.

180. All documents which substantiate the fact that Pamela Massad was present at the loan closing for 425B Salisbury Street.

181. Telephone bills for any cell phone used by you on July 26, 2004.

182. All documents reflecting communications between yourself and Commerce Bank relative to the 425B Salisbury Street loan closing referenced in the Amended Complaint.

183. All documents which relate to the 425B Salisbury Street loan closing referenced in the Amended Complaint. This request includes, but is not limited to promissory notes, commitment letters, term sheet, guarantee, loan payoff letters, mortgages, loan agreement, settlement statements.

184. Each of the documents specifically identified or referenced in paragraphs 232-276 of the Amended Complaint.

185. All documents relating to the lawsuit referenced at paragraph 232 of the Amended Complaint. This request includes, but is not limited to the complaint, any answer, any discovery responses, any deposition transcripts, any court orders and any documents reflecting the outcome of the litigation.

186. All documents relating to the lawsuit referenced at paragraph 237 of the Amended Complaint. This request includes, but is not limited to the complaint, any answer,

any discovery responses, any deposition transcripts, any court orders and any documents reflecting the outcome of the litigation.

187.    Copies of the telephone bills reflecting the telephone calls referenced in paragraphs 238, 240, 248, 255, 265, 267, 268, 270, 271......... of the Amended Complaint.

188.    All documents relating to the bankruptcy filing referenced at paragraph 241 of the Amended Complaint. This request includes, but is not limited to the petition, any schedules, any motions, any court orders or decision and documents reflecting the outcome of the litigation.

189.    All documents which substantiate the fact that Roy Bourgeois was acting as Mallegni or Massad's lawyer when he sought an attachment against Depietri as alleged at paragraph 242 of the Amended Complaint.

190.    All documents which relate to the legal matter referenced in paragraph 242 of the Amended Complaint. This request includes, but is not limited to the complaint, any answer, any discovery responses, any deposition transcripts, any court orders, any injunction motions and any documents reflecting the outcome of the litigation.

191.    All documents sufficient to identify the "two other individuals" who Attorney Bourgeois alleged told that the attachment [was] filed against Depietri in retaliation for Fiorillo's lawsuit against defendants Mallegni and LBM as alleged at paragraph 243 of the Amended Complaint.

192.    All documents which memorialize Mallegni informing LaCourse to cease all work on projects owned by Fiorillo and Depietri as alleged in paragraph 244 of the Amended Complaint.

193.    All documents reflecting the mechanics liens identified in paragraph 245-246 of the Amended Complaint.

194.    All documents which reflect Marcello Mallegni directing Kenneth LaCourse to place a mechanic's lien on the Erie Avenue property as alleged in paragraphs 245-246 of the Amended Complaint.

195.    All documents which evidence the submission of invoices for payment by Kenneth LaCourse or LaCourse Construction to Erie Avenue Residential Realty Trust.

196.    All documents which evidence the payment of monies to Kenneth LaCourse or LaCourse Construction by Erie Avenue Residential Realty Trust.

197. All documents reflecting any bank accounts of Erie Avenue Residential Realty Trust. This request includes bank statements and cancelled checks.

198. All documents which substantiate the fact that Gamewell Realty sought to charge or assess "$300,000 in fraudulently inflated and usurious interest charges" as alleged in paragraph 247 of the Amended Complaint. This request includes, but is not limited to, all accountings, any documents which reflect this calculation, any documents which provide an accurate accounting and all documents reflecting communications between the parties reflecting the payoff figures.

199. All documents reflecting the Commerce Bank $3 million note and mortgage on the Chase building as alleged in paragraph 248 of the Amended Complaint. This request includes but is not limited to promissory notes, loan agreements, guarantees and mortgages.

200. The affidavit referenced at paragraph 254 of the Amended Complaint.

201. All documents which substantiate the fact that LBM "fraudulently claimed to be owed $493,656.38 on the Evergrass Note" as alleged in paragraph 263 of the Amended Complaint. This request includes, but is not limited to, all accountings, any documents which reflect this calculation, any documents which provide an accurate accounting and all documents reflecting communications between the parties reflecting the payoff figures.

202. All documents which substantiate the fact that the June, 2007 payoff of the Commerce Bank loan included "$19,500 in fraudulently assessed interest charges" as alleged in paragraph 272 of the Amended Complaint. This request includes, but is not limited to, all accountings, any documents which reflect this calculation, any documents which provide an accurate accounting and all documents reflecting communications between the parties reflecting the payoff figures.

203. All documents which relate to the two legal matters referenced in paragraph 276 of the Amended Complaint. This request includes, but is not limited to the complaint, any answer, any discovery responses, any deposition transcripts, any court orders, any injunction motions and any documents reflecting the outcome of the litigation.

204. All documents relating to the meeting referenced at paragraph 277 of the Amended Complaint.

205. All documents relating to James Tavano.

206. All documents provided to any expert witness in this matter.

207. All documents you intend to offer into evidence in the trial of this matter.

208.   All documents identified in your initial disclosures.

209.   All documents submitted to law enforcement or any regulatory or administrative
       agency pertaining to any of the allegations set forth in the Amended Complaint.

210.   All documents reflecting the findings by any court, municipal body or
       administrative agency which determine that you have acted in an unfair,
       deceptive, fraudulent manner.

211.   All documents reflecting communications between any plaintiff and any
       defendant relating in any way to any of the loans or development projects set forth
       in the Amended Complaint.

212.   All documents reflecting non-privileged communications between and among the
       plaintiffs which relate in any way to any of the loans or development projects set
       forth in the Amended Complaint.

213.   Any and all telephone phone bills reflecting telephone calls made by you from
       2001 to the present.

214.   For the time period 2004 to the present, all documents reflecting communications,
       including email communications with Bernard Laverty, Francis Fraine, Robert
       Bradley, John Gallagher, David Depietri, William Depietri, Robert Depietri,
       Charles Sanderson or William Abraham relating in any way to any of this lawsuit,
       the allegations set forth in the lawsuit, David Massad, Pamela Massad, Marcello
       Mallegni, Gamewell Realty, Wolfpen Financial, Michael Norris or any allegation
       set forth in any lawsuit initiated by any of the above identified individuals.

215.   For the time period 2004 to the present, all documents reflecting non-privileged
       communications, including email communications with any third party relating in
       any way to any of this lawsuit, the allegations set forth in the lawsuit, David
       Massad, Pamela Massad, Marcello Mallegni, Gamewell Realty, Wolfpen
       Financial, Michael Norris or any allegation set forth in any lawsuit initiated by
       any of the above identified individuals.

216.   All documents reflecting any non-privileged communications with any of your
       fellow plaintiffs relative to any matter referenced in the lawsuit.

Respectfully submitted,

DAVID G. MASSAD, PAMELA MASSAD
AND GAMEWELL REALTY, INC.

By their attorneys,

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document
was served upon the attorney of record for each other
party by mail/hand on _2/26/10_

/s/ David H. Rich
David H. Rich (BBO#634275)
Todd & Weld LLP
28 State Street, 31st Floor
Boston, MA  02109
(617) 720-2626
drich@toddweld.com

Date:   February 26, 2010

**Exhibit 2**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NICHOLAS J. FIORILLO, TRACY KROWEL, ROBERT DEPIETRI, JR., KIMBERLY DEPIETRI, SHREWSBURY STREET DEVELOPMENT COMPANY and ERIE AVENUE RESIDENTIAL REALTY TRUST<br><br>    Plaintiffs,<br><br>v.<br><br>DAVID G. MASSAD, PAMELA MASSAD, MARCELLO MALLEGNI, MICHAEL NORRIS COMMERCE BANK AND TRUST COMPANY GAMEWELL REALTY, INC., LBM FINANCIAL, INC. AND WOLFPEN FINANCIAL, LLC<br><br>    Defendants. | Civil Action No. 07-40015-FDS |

## DEFENDANT DAVID G. MASSAD, PAMELA A. MASSAD AND GAMEWELL REALTY, INC.'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS DIRECTED TO NICHOLAS J. FIORILLO

Pursuant to Federal Rules of Civil Procedure 26 and 34, Defendants David

Massad, Pamela Massad and Gamewell Realty, Inc. ("Defendants") hereby requests that

Plaintiff Nicholas Fiorillo produce for inspection and copying the documents requested

below. The production of documents requested herein shall take place at the offices of

Plaintiff's counsel, Todd & Weld LLP, 28 State Street, 31st Floor, Boston, Massachusetts

02109 within thirty (30) days after service of this request.

### INSTRUCTIONS

1.      Defendants expressly incorporates herein the provisions of Fed. R. Civ. P. 26(b)(5) and 34(b).

2.      In producing documents in response to this request, Mr. Fiorillo is required to furnish all documents, including electronic media, in his possession, custody or control that are known or available to him regardless of whether those documents are

possessed by Mr. Fiorillo, or by any agent, attorney, representative, affiliate or employee. Mr. Fiorillo must make a diligent search of his records and of other papers and materials in his possession or available to him or his attorneys or other representatives.

3.      When responding to this request for production of documents, Mr. Fiorillo is requested to respond in writing and state as to each of the requests:

(a)     that there are documents responsive to the request, and that they will be produced;

(b)     that there are documents responsive to the request, but that Mr. Fiorillo refuses to produce them because of a claim of privilege or for some other reason; or

(c)     that there are no documents responsive to the request.

4.      In the event that Mr. Fiorillo objects to any request set forth below on the basis of a contention that it is overbroad for any reason, please respond to that request as narrowed in such a way as to render it not overbroad and state the extent Mr. Fiorillo has narrowed that request for purposes of the response.

5.      In producing documents pursuant to this request, please indicate to which numbered request such document is responsive. If a document or any other item is produced pursuant to more than one request, please so designate.

6.      The following rules of construction apply to each of these discovery requests:

(a)     The terms "all" and "each" shall be construed as "all and each";

(b)     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope; and

(c)     The use of the singular form of any word includes the plural and vice versa.

(d)     These requests are to be construed broadly, and construction of their terms should be inclusive and in favor of providing an affirmative response.

7.      If any portion of any of these requests is objected to, the remaining nonobjectionable portions are to be responded to fully and completely.

8.      No document shall be withheld from discovery based on any claim or belief by you that such document already is in the possession of Plaintiff.

9.     Objections: If an objection is made to producing any of the documents requested on the grounds of attorney/client privilege, work product protection, or on any other basis, and such documents are withheld from production, please identify each such documents so withheld by:

(a)     the author, originator, or addresser;

(b)     the addressees;

(c)     all recipients of copies;

(d)     the date the document was prepared;

(e)     the nature of the document (i.e. letter, note, report, memorandum, etc.);

(f)     the present custodian and location of the document; and

(g)     a statement of the factual and legal reason(s) why the document is being withheld from production.

10.     Unavailability of Document: If you decline or are unable to produce a document on the ground that the document or any of its contents is no longer in existence, has been destroyed, or is otherwise unavailable, please provide the following information as to each such document:

(a)     the name of its author, originator, or addresser;

(b)     the name of each person to whom the original or a copy was addressed or delivered;

(c)     the name of each person known or reasonably believed by you to have present possession, custody, or control of the original and each copy thereof;

(d)     its date; and

(e)     a description of the circumstances causing or surrounding the destruction, loss or other unavailability of the document, including a description of the disposition made of each copy of the document, by whom it was made, the date or approximate date on which such disposition was made, and why such disposition was made.

11.     If no documents exist which are responsive to a request, please state that no documents exist.

12.     A request for a document shall be deemed to include a request for any and all transmittal sheets, cover letters, exhibits, enclosures, or attachments to the document, in addition to the document itself.

13.     These requests are continuing in nature and require supplemental response and production.

14.     Electronic emails and all documents originally generated in electronic form or maintained in electronic form should be produced in their native, electronic format, with search capabilities to the extent such capabilities are available.

## DEFINITIONS

As used herein, the words and phrases set out below shall have the following meanings:

1.     The term "Mr. Fiorillo" or "Nicholas Fiorillo" or "Fiorillo" means collectively Nicholas Fiorillo, any agent, representative, employee or corporate or legal entity for which Mr. Fiorillo possesses any interest.

2.     The term "Mr. Depietri" or "Robert Depietri" or "Depietri" means collectively Robert Depietri, any agent, representative, employee or corporate or legal entity for which Mr. Depietri possesses any interest.

3.     The term "Mrs. Depietri" means collectively Kimberly Depietri, any agent, representative, employee or corporate or legal entity for which Kimberly Depietri possesses any interest.

4.     The term "Ms. Krowel" means collectively Tracey Krowel, any agent, representative, employee or corporate or legal entity for which Ms. Krowel possesses any interest.

5.     The term "David Massad" means collectively David Massad, any agent, representative, employee or corporate or legal entity for which Mr. Massad possesses any interest.

6.     The term "Pamela Massad" means collectively Pamela Massad, any agent, representative, employee or corporate or legal entity for which Pamela Massad possesses any interest.

7.     The term "Mr. Mallegni" or "Marcello Mallegni" or "Mallegni" means collectively Marcello Mallegni, any agent, representative, employee or corporate or legal entity for which Marcello Mallegni possesses any interest

8.     The term "Mr. Norris" or "Michael Norris" or "Norris" means collectively Michael Norris, any agent, representative, employee or corporate or legal entity for which Michael Norris possesses any interest

9.     For each corporate or legal entity listed below, the reference to that corporate entity shall mean collectively that particular corporate or legal entity or any agent, representative, employee, accountant or attorney for that particular corporate or legal entity.

10.     The term "Document" and "Communication" expressly includes all emails, instant messages, text messages, voicemails, and other electronically stored information in its native, searchable form.

11.     A "representative" of a person means any officer, director, agent, employee, attorney, or other representative of such person.

12.     "You" and "your" shall mean or apply to Plaintiff Nicholas Fiorillo.

13.     "Amended Complaint" shall mean the Amended Complaint filed in this matter by the Plaintiffs and dated November 20, 2007 (Docket No. 29).

## REQUESTS

1.     All documents which reflect Pamela Massad's participation or involvement in a criminal conspiracy.

2.     All documents which reflect Gamewell Realty's participation or involvement in a criminal conspiracy.

3.     All documents which reflect David Massad's participation or involvement in a criminal conspiracy.

4.     All documents which prove or evidence the existence of an association-in-fact RICO enterprise as alleged in the Amended Complaint.

5.     All corporate, formational and other documents reflecting the ownership structure of any of the following entities:

- 219 Forest Street Realty Trust
- 219 Forest Street, LLC
- 201 Forest Street Realty Trust
- 201 Forest Street, LLC
- Old Centre Village Realty Trust
- Lyman Development, LLC
- Lyman Development Realty Trust
- 230 Maple Street LLC
- 230 Maple Street Realty Trust
- 57 East Main Street, LLC
- 57 East Main Street Realty Trust
- 65 Boston Post Road Realty Trust

- 65 BPW LLC

This request, includes, but is not limited to declaration of trusts, operating agreements, documents reflecting ownership or beneficial interests in the entity or trust.

6. For the time period 2000 to the present, the corporate tax returns for each of the entities identified above. This request includes, but is not limited to all tax filings, forms, schedules and supplementary information.

7. For the time period 2000 to the present, the corporate tax returns for Shrewsbury Street Development Corporation. This request includes, but is not limited to all tax filings, forms, schedules and supplementary information.

8. For the time period 2000 to the present, the corporate tax returns for Erie Avenue Residential Realty Trust. This request includes, but is not limited to all tax filings, forms, schedules and supplementary information.

9. For the time period 2000 to the present, all federal and state tax returns of Nicholas Fiorillo. This request includes, but is not limited to all tax filings, forms, schedules and supplementary information.

10. For the time period 2000 to the present, all federal and state tax returns of Robert Depietri. This request includes, but is not limited to all tax filings, forms, schedules and supplementary information.

11. For the time period 2000 to the present, all federal and state tax returns of Tracey Krowel. This request includes, but is not limited to all tax filings, forms, schedules and supplementary information.

12. For the time period 2000 to the present, all federal and state tax returns of Kimberly Depietri. This request includes, but is not limited to all tax filings, forms, schedules and supplementary information.

13. For the time period 2000 to the present, documents sufficient to identify any accountant who has performed services on your behalf.

14. All documents reflecting any damages you allege to have suffered in this case.

15. All documents reflecting any acts of mail or wire fraud which you contend were committed against you by Pamela Massad, David Massad or Gamewell Realty.

16. All documents reflecting any acts of bank fraud which you contend were committed against you by Pamela Massad, David Massad or Gamewell Realty.

17. All documents reflecting any acts of bankruptcy fraud which you contend were committed against you by Pamela Massad, David Massad or Gamewell Realty.

18. All documents reflecting any acts of money laundering which you contend were committed against you by Pamela Massad, David Massad or Gamewell Realty.

19. All documents reflecting any acts of obstruction of justice which you contend were committed against you by Pamela Massad, David Massad or Gamewell Realty.

20. All documents reflecting any acts of loan sharking which you contend were committed against you by Pamela Massad, David Massad or Gamewell Realty.

21. All documents reflecting any acts of extortion which you contend were committed against you by Pamela Massad, David Massad or Gamewell Realty.

22. All documents reflecting any violation of the Fair Housing Act which you contend were committed against you by Pamela Massad, David Massad or Gamewell Realty.

23. All documents reflecting any violation of the Truth in Lending Act which you contend were committed against you by Pamela Massad, David Massad or Gamewell Realty.

24. All documents reflecting any violation of the Real Estate Settlement Procedures Act which you contend were committed against you by Pamela Massad, David Massad or Gamewell Realty.

25. All documents reflecting any violation of the Equal Credit Opportunity Act which you contend were committed against you by Pamela Massad, David Massad or Gamewell Realty.

26. All documents reflecting any acts of mail or wire fraud which you contend were committed against you by any party to this lawsuit.

27. All documents reflecting any acts of bank fraud which you contend were committed against you by any party to this lawsuit.

28. All documents reflecting any acts of bankruptcy fraud which you contend were committed against you by any party to this lawsuit.

29. All documents reflecting any acts of money laundering which you contend were committed against you by any party to this lawsuit.

30. All documents reflecting any acts of obstruction of justice which you contend were committed against you by any party to this lawsuit.

31.   All documents reflecting any acts of loan sharking which you contend were committed against you by any party to this lawsuit.

32.   All documents reflecting any acts of extortion which you contend were committed against you by any party to this lawsuit.

33.   All documents reflecting any violation of the Fair Housing Act which you contend were committed against you by any party to this lawsuit.

34.   All documents reflecting any violation of the Truth in Lending Act which you contend were committed against you by any party to this lawsuit.

35.   All documents reflecting any violation of the Real Estate Settlement Procedures Act which you contend were committed against you by any party to this lawsuit.

36.   All documents reflecting any violation of the Equal Credit Opportunity Act which you contend were committed against you by any party to this lawsuit.

37.   All documents memorializing any threats made by any of the Defendants at any time.

38.   All documents reflecting Nicholas Fiorillo, individually, as a borrower of any loan made by any of the Defendants in this case.

39.   All documents reflecting Robert Depietri, individually, as a borrower of any loan made by any of the Defendants in this case.

40.   All documents reflecting Tracey Krowel, individually, as a borrower of any loan made by any of the Defendants in this case.

41.   All documents reflecting Kimberly Depietri, individually, as a borrower of any loan made by any of the Defendants in this case.

42.   All documents reflecting Erie Avenue Residential Realty Trust, as a borrower of any loan made by any of the Defendants in this case.

43.   All documents reflecting Shrewsbury Street Development Company as a borrower of any loan made by any of the Defendants in this case.

44.   All documents relating to any proposed, contemplated or actual financing arrangement relative to 267 Shrewsbury Street, Worcester, MA.

45.   All documents relating to any proposed, contemplated or actual development of 267 Shrewsbury Street, Worcester, MA.

46. All documents reflecting any contracts, agreement or understandings relative to 267 Shrewsbury Street.

47. All documents relating to the provision of a deposit for 267 Shrewsbury Street as alleged in paragraph 47 of the Amended Complaint.

48. Any and all commitment letters, term sheets, promissory notes, mortgages, guarantees, settlement statements or loan agreements relative to 267 Shrewsbury Street.

49. All documents reflecting the $600,000 offer to purchase the Airline Lewis property referenced in Paragraph 54 of the Amended Complaint.

50. All documents reflecting any loan payoff calculations provided by Pamela Massad, David Massad or Gamewell Realty relating to 267 Shrewsbury Street.

51. All documents reflecting any loan payoff calculations provided by Pamela Massad, David Massad or Gamewell Realty relating to any property or loan referenced in the Amended Complaint.

52. All documents reflecting any loan payoff calculations provided by any defendant relating to any property or loan referenced in the Amended Complaint.

53. All documents reflecting the $800,000 offer to purchase the Airline Lewis property referenced in Paragraph 55 of the Amended Complaint.

54. All documents reflecting the $760,000 offer to purchase the Airline Lewis property referenced in Paragraph 56 of the Amended Complaint.

55. All documents reflecting any communications with "a national fitness center" relative to the Airline Lewis Building as referenced in Paragraph 58 of the Amended Complaint.

56. All documents reflecting any communications with Universal Architects or CFS Engineering relative to the Airline Lewis Building as referenced in Paragraph 58 of the Amended Complaint.

57. All documents reflecting any negotiations with an adjacent landowner relative to the Airline Lewis Building as referenced in Paragraph 58 of the Amended Complaint.

58. All documents reflecting the expenditure of any monies relative to the development of the Airline Lewis property.

59. All documents reflecting the "other outstanding loans with [ ] various other lending companies" as referenced in Paragraph 61 of the Amended Complaint.

This request includes, but is not limited to promissory notes, mortgages, security agreements, demand letters, term sheets, commitment letters and other documents relating to the loan.

60. All documents reflecting any lawsuits or legal proceedings relative to 267 Shrewsbury Street. This request includes, but is not limited to complaints, answers, discovery responses, motions, deposition transcripts, court pleadings, settlement agreements and judgments or dismissal papers.

61. All documents relating to the 219 Forest Street loan between Wolfpen and 219 Forest as alleged in the Amended Complaint.

62. All documents reflecting the $200,000 personal loan made by Depietri to 219 Forest as alleged in paragraph 63 of the Amended Complaint.

63. All documents which demonstrate any ownership interest held by you in 219 Forest Street, LLC or 219 Forest Street Realty Trust.

64. All documents reflecting any actual, proposed or contemplated loan agreement concerning 219 Forest. This request includes, but is not limited to loan agreements, promissory notes, mortgages, guarantees, settlement statements, security agreements, term sheets, commitment letters or other documents reflecting any loan terms.

65. All documents reflecting the personal payment of funds to any of the Defendants for any reason.

66. All documents reflecting the personal investment of funds into any of the legal entities referenced in the Amended Complaint.

67. All documents reflecting the personal payment of $202,271 by Depietri to LBM Financial as referenced in paragraph 69 of the Amended Complaint.

68. All documents reflecting the commitment provided to Depietri by First Essex Bank as referenced in paragraph 71 of the Amended Complaint.

69. All documents which demonstrate that Massad directed Mallegni to refuse to the First Essex Bank proposal as alleged at paragraph 72 of the Amended Complaint.

70. All documents reflecting the "withdrawal" by Commerce Bank of the loan commitment as alleged in paragraph 73 of the Amended Complaint.

71. All documents received from Commerce Bank or provided to Commerce Bank relative to 219 Forest at any time.

72. All documents reflecting the payment by 219 Forest of any outstanding loans referenced in the Amended Complaint.

73. All documents which substantiate the fact that Mallegni "instructed defendant Norris to break his lease with the Boston Post Road Trust and move into an office building owned by Mallegni" as alleged in paragraph 78 of the Amended Complaint.

74. All documents reflecting the January 28, 2004 letter from Mallegni and LBM Financial to 219 Forest as referenced in paragraph 79 of the Amended Complaint.

75. The January 30, 2004 letter referenced in paragraph 80 of the Amended Complaint.

76. All documents which reflect the fact that Mr. Norris "breached his lease" as alleged in paragraph 81 of the Amended Complaint. This request includes, but is not limited to a copy of the lease and any amendments and any notices concerning defaults under the lease.

77. All documents which reflect defendant Mallegni and LBM Financial assessing the December note a default rate of 20% plus interest plus one point per month as alleged in paragraph 82 of the Amended Complaint. This request includes, but is not limited to, a copy of the December note, any demand notices, any accountings and any documents reflecting the charging of interest.

78. All documents which reflect the "financing commitments" obtained by Depietri as alleged in paragraph 83 of the Amended Complaint.

79. All documents which reflect "approximately $5,000,000 of pre-sales of the condominiums" as alleged in paragraph 83 of the Amended Complaint. This request includes, but is not limited to, copies of any purchase and sale agreements, offers to purchase, copies of deposit checks and any other evidence identifying pre-sales.

80. All documents reflecting any requests for confirmation of payoff amounts due under any of the loans at issue in the Amended Complaint.

81. All documents reflecting responses by any of the defendants to requests for confirmation of payoff amounts for any loan at issue in the Amended Complaint.

82. All documents which reflect the refusal by any defendant to provide confirmation of any payoff amount for any loan at issue in the Amended Complaint.

83. All documents reflecting the pledge by Mallengi of "the December Notes and mortgages on 219 Forest and 201 Forest to DanversBank as collateral for an obligation of LBM Financial relating to property in Manchester, New Hampshire

in which defendants Mallegni and Massad held an interest" as alleged in paragraph 88 of the Amended Complaint.

84. All documents which identify the "property in Manchester, New Hampshire" referenced in paragraph 88 of the Amended Complaint and all documents which demonstrate that Massad "held an interest" in this property.

85. All documents which demonstrate that Mallegni did not have authority from investors to "pledge the December note to DanversBank" as alleged in paragraph 88 of the Amended Complaint.

86. All documents which confirm that Mallegni did not inform DanversBank of the matters listed in paragraph 88 of the Amended Complaint.

87. The loan participation agreement referenced in paragraph 88 of the Amended Complaint.

88. All documents which reflect DanversBank assigning the December Note and Mortgage back to LBM in exchange for a second mortgage on 171 Locke Drive as alleged in paragraph 89 of the Amended Complaint.

89. All documents reflecting the February 20, 2007 demand notices and the April 18, 2007 Notice of Intent to foreclose referenced in paragraph 90 of the Amended Complaint.

90. All documents reflecting the purchase and sale agreement between 219 Forest and Forekicks II as alleged in paragraph 91 of the Amended Complaint.

91. All documents which reflect Mallegni and Norris contacting representatives of Forekicks II and discouraging them from purchasing the property as alleged in paragraph 91 of the Amended Complaint.

92. All documents reflecting "two other financing commitments" referenced in paragraph 93 of the Amended Complaint.

93. Any and all calculations which demonstrate that LBM charged usurious and fraudulently inflated interest payments for any of the loan identified in the Amended Complaint.

94. All documents relating to 249 Lincoln Street.

95. All documents relating to the loan pertaining to 249 Lincoln Street, Worcester. This request includes any term sheet, commitment letter, promissory note, mortgages, loan agreements.

96.  All documents relating the $20,000 in deposits and soft money invested in 249 Lincoln Street property as alleged in paragraph 99 of the Amended Complaint. This request includes, but is not limited to cancelled checks, invoices, purchase and sale agreements, and bills.

97.  All documents reflecting communications between yourself and the sellers of 249 Lincoln Street identified in paragraph 99 of the Amended Complaint.

98.  All documents relating to the granting to Marcello Mallegni of a 25% ownership interest in the building located at 157 Shrewsbury Street.

99.  All documents reflecting the repayment of any monies to LBM Financial relating to the May 3, 2005 $550,000 loan referenced in paragraph 100 of the Amended Complaint.

100. All documents which substantiate the "loan to refinance 249 Lincoln Street" as alleged in paragraph 102 of the Amended Complaint. This request includes, but is not limited to, any term sheets, letters of intent or commitment letters.

101. All documents which reflect communications between yourself and any of the defendants relating to the 249 Lincoln Street loan. This request includes, but is not limited to notices of default, notices of intent to foreclose, demands to payoff figures and payoff amounts.

102. All documents which substantiate the claim that the loan calculation for the 249 Lincoln Street loan is "fraudulently inflated" as alleged at paragraph 106 of the Amended Complaint.

103. All documents reflecting any efforts by Chase Building Associates II Limited Partnership to refinance its mortgage on the commercial property located at 44 Front Street, Worcester, Massachusetts.

104. The Commerce Bank loan commitment identified at Paragraph 108 of the Amended Complaint.

105. The HUD-1 Settlement Statement referenced in paragraph 110 of the Amended Complaint.

106. All documents reflecting the rewriting of the "CBA loan" as alleged in paragraph 111 of the Amended Complaint.

107. All documents relating to the Old Centre Village Realty Trust loan as alleged at paragraph 112 of the Amended Complaint. This request includes, but is not limited to, a term sheet, commitment letter, loan agreement, promissory notes, mortgages, settlement statements and guarantees.

108.   All documents relating to the securing of permits by Old Centre Village Realty Trust as alleged at paragraph 113 of the Amended Complaint.

109.   The "settlement statement" referenced at paragraph 114 of the Amended Complaint.

110.   Any "settlement statement" or HUD settlement statement which you contend contains improper, fraudulent, illegal or untruthful entries.

111.   All documents which substantiate the fact that "Old Centre Village Trust paid defendant LBM Financial over $94,000 in fraudulent and usurious interest charges" as alleged in paragraph 117 of the Amended Complaint. This request includes, but is not limited to, all accountings, any documents which reflect this calculation, any documents which provide an accurate accounting and all documents reflecting communications between the parties reflecting the payoff figures.

112.   All documents concerning the Lyman Development Loan as alleged at paragraph 119 of the Amended Complaint. This request includes, but is not limited to term sheets, commitment letters, promissory notes, settlement statements, guarantees, mortgages, loan agreements and communications between the parties concerning the loan.

113.   All documents concerning the first mortgage in place on August 16, 2001 at 44 Lyman Street, Northborough, MA. This request includes but is not limited to any promissory notes securing the mortgage, the mortgage, any guarantees between the first mortgage holder and any obligor and any communications between the first mortgage holder and Lyman Development.

114.   All documents relating to the lawsuit referenced at paragraph 121 of the Amended Complaint. This request includes, but is not limited to pleadings, deposition transcripts, the complaint, any settlement agreement, interrogatory answers and any sworn statements made in connection with the lawsuit.

115.   All documents which substantiate the fact that Lyman Development paid defendant LBM Financial $164,321.97 in fraudulently inflated interest" as alleged in paragraph 126 of the Amended Complaint. This request includes, but is not limited to, all accountings, any documents which reflect this calculation, any documents which provide an accurate accounting and all documents reflecting communications between the parties reflecting the payoff figures.

116.   All documents relating to the 230 Maple Street loans referenced in paragraph 132 of the Amended Complaint. This request includes, but is not limited all documents relating to the Milford National Bank loan documents as well as the LBM Financial loan documents. These request includes, but is not limited to, term sheets, commitment letters, promissory notes, guarantees, mortgages, loan

agreements, settlement statements and communications between the lenders and the borrower.

117.   All documents relating to the "pending sale of the property" referenced in paragraph 134 of the Amended Complaint.

118.   All documents which substantiate the fact that 230 Maple Street Trust was required to pay "fraudulently inflated interest charges" as alleged in paragraph 135 of the Amended Complaint.  This request includes, but is not limited to, all accountings, any documents which reflect this calculation, any documents which provide an accurate accounting and all documents reflecting communications between the parties reflecting the payoff figures.

119.   All documents relating to the sale by 230 Maple Street Trust to Bluefin Properties.  This request includes, but is not any purchase and sale agreement and any settlement statement or other closing document.

120.   The March 31, 2004 letter referenced at paragraph 140 of the Amended Complaint.

121.   All documents relating to the 88 Shrewsbury Street loan referenced at paragraph 141 of the Amended Complaint.

122.   All documents relating to Shrewsbury Street Investment LLC.

123.   All documents reflecting the payment of monies by 88 Shrewsbury Street Investment LLC to LBM Financial as alleged in paragraph 145 of the Amended Complaint.

124.   All documents relating to the sale of 88 Shrewsbury Street.  This request includes, but is not limited to settlement statements, any purchase and sale agreement or other closing document.

125.   The purchase and sale agreement to purchase the former Manzi's Funeral Home and four adjacent parcels of land located at 175-181 Shrewsbury Street, Worcester, MA for $1.2 million" as alleged at paragraph 148 of the Amended Complaint.

126.   All documents reflecting the "commitment" for $1,500,000 from defendant LBM Financial as alleged at paragraph 150 of the Amended Complaint.

127.   All documents reflecting Fiorillo's assignment of his ownership interest in the Manzi parcels to Mallegni and Massad as alleged at paragraph 150 of the Amended Complaint.

128. All documents which would substantiate the fact that Fiorillo owns any interest in Shrewsbury Street General Investment LLC.

129. All documents reflecting any investment made by any of the Plaintiffs in Shrewsbury Street General Investment LLC.

130. All documents reflecting any "public statement" that Fiorillo was a 50% partner in the project.

131. All documents reflecting the substantial investment of "time and money in preparing the development plans for a 38,000 square foot mixed use retail/office/condo project that fully capitalized on the site" as alleged at paragraph 156 of the Amended Complaint. This request includes, but is not limited to cancelled checks, invoices, bills or any material substantiating the work and investment of money.

132. All documents which substantiate the fact that the "proposed development project" referenced in paragraph 156 of the Amended Complaint "had a projected 'as finished' value of over $12 million." This request includes, but is not limited to appraisals, pro forms and valuations.

133. All documents reflecting the listing for sale of one of the "Manzi parcels" for a sale price of $2.2 million as alleged at paragraph 158 of Amended Complaint.

134. All documents reflecting the actual sale of any of the "Manzi parcels" as that term is used in the Amended Complaint at any time.

135. All documents reflecting the 157 Shrewsbury Street loan as alleged in paragraphs 165 of the Amended Complaint. This request includes any promissory notes, commitment letters, term sheets, settlement statements, mortgages, loan agreements or guarantees.

136. All documents reflecting the repayment of any loan made by LBM Financial relating to 157 Shrewsbury Street.

137. All documents reflecting any interaction with Commerce Bank relative to any possible loan for 157 Shrewsbury Street.

138. All documents relating to 157 Shrewsbury Street, Worcester. This request includes any purchase and sale agreements, any documents reflecting any down payments or deposits, any documents reflecting the expenditure of any monies.

139. All documents relating to any financing commitment or other documentation relating to Webster First Federal Credit Union as alleged in paragraph 167 of the Amended Complaint.

140.    The pay-off letter referenced in paragraph 168 of the Amended Complaint.

141.    All documents which substantiate the fact that LBM Financial sought to charge "$135,000 in fraudulently inflated interest" as alleged in paragraph 168 of the Amended Complaint. This request includes, but is not limited to, all accountings, any documents which reflect this calculation, any documents which provide an accurate accounting and all documents reflecting communications between the parties reflecting the payoff figures.

142.    Please set forth in full and complete detail all documents relating to the Stafford Hill Estates purchase as alleged at paragraphs 170-180 of the Amended Complaint. This request includes, but is not limited to any term sheets, commitment letters, purchase and sale agreements,

143.    All documents reflecting the $50,000 loan referenced at paragraph 170 of the Amended Complaint. This request includes any promissory notes, mortgages, guarantees and any communications with the lender.

144.    All documents reflecting the purchase and sale agreement reflected in paragraph 170 of the Amended Complaint.

145.    All documents submitted to Commerce Bank in connection with the Stafford Hill Estates purchase as alleged in paragraph 171 of the Amended Complaint.

146.    All documents reflecting the purchase and sale agreement with Toll Brothers referenced in paragraph 173.

147.    All communications with the Toll Brothers concerning the Stafford Hill Estates purchase.

148.    All documents reflecting the commitment letter referenced in paragraph 176 of the Amended Complaint.

149.    Any loan participation agreement between Massad and LBM Financial.

150.    Any loan participation agreement between LBM and any of its investors.

151.    All documents which reflect Shrewsbury Street Development Company's corporate existence. This request includes, but is not limited to shareholder meetings, articles of organization, corporate votes, annual reports, stock certificates, bylaws, and any amendments thereto.

152.    All documents which reflect Erie Avenue Residential Realty Trust's legal existence. This request includes, but is not limited to documents reflecting the creation of the trust, and Declaration of Trust, documents reflecting the

beneficiaries of the trust at any time and any schedules of beneficiaries created at any time.

153.  All documents relating to the Evergrass loan referenced in paragraph 181 of the Amended Complaint. This request includes but is not limited to term sheets, commitment letters, loan agreements, promissory notes, security agreements, mortgages, guarantees and settlement statements.

154.  All documents which substantiate the writing of a $23,334.36 unauthorized check out of the loan proceeds made payable to Mallegni as alleged in paragraph 183 of the Amended Complaint. Include in your response, any documents which demonstrate that the check was unauthorized.

155.  All documents relating to the Evergrass loan referenced in paragraph 186 of the Amended Complaint. This request includes but is not limited to term sheets, commitment letters, loan agreements, promissory notes, security agreements, mortgages, guarantees and settlement statements.

156.  All documents which substantiate the fact that Evergrass "overpaid defendant LBM Financial approximately $95,000" as alleged in paragraph 187 of the Amended Complaint. This request includes, but is not limited to, all accountings, any documents which reflect this calculation, any documents which provide an accurate accounting and all documents reflecting communications between the parties reflecting the payoff figures.

157.  All documents evidencing payments made by Evergrass to LBM at any time.

158.  All documents reflecting "the substantial deposit that [Depietri] had put down on the property as alleged in paragraph 190 of the Amended Complaint.

159.  All documents relating to the LBM Financial loan to East Main Street Trust referenced at paragraph 191 of the Amended Complaint. The request includes, but is not limited to, any commitment letters, term sheets, promissory notes, settlement statements, guarantees, mortgages, security agreements, loan agreements and all documents reflecting the provision of a 25% non-voting ownership to Mallegni.

160.  All documents reflecting Depietri's $325,000 loan to East Main Street Trust. This request includes all loan documents, all cancelled checks and any documentation memorializing the receipt of these funds by East Main Street Trust.

161.  All documents reflecting any payments made by East Main Street Trust to LBM Financial or Mallegni.

162.  All documents relating to the loan closing referenced in paragraph 193 of the Amended Complaint. The request includes, but is not limited to, any commitment

letters, term sheets, promissory notes, settlement statements, guarantees, mortgages, security agreements, loan agreements and all documents reflecting a priority cash flow distribution.

163. The March 31, 2004 fax referenced in paragraph 197 of the Amended Complaint.

164. All communications between Depietri and any of the Defendants relating to the 57 East Main Street Realty Trust.

165. The letters referenced in paragraphs 199-201 of the Amended Complaint.

166. All documents which substantiate the fact that 57 East Main Street Realty Trust paid "almost $750,000 in usurious and fraudulently inflated interest charges" as alleged in paragraph 202 of the Amended Complaint. This request includes, but is not limited to, all accountings, any documents which reflect this calculation, any documents which provide an accurate accounting and all documents reflecting communications between the parties reflecting the payoff figures.

167. All documents reflecting the formation of the Erie Avenue Residential Realty Trust.

168. All documents relating to the Erie Avenue Residential Realty Trust loan referenced at paragraph 206 of the Amended Complaint. The request includes, but is not limited to, any commitment letters, term sheets, promissory notes, settlement statements, guarantees, mortgages, security agreements and loan agreements.

169. All documents which substantiate the claim that Mallegni instructed LaCourse Construction not to pull the necessary permits for the project as alleged in paragraph 211 of the Amended Complaint.

170. All documents reflecting communications between yourself and LaCourse Construction relative to any development project or loan referenced in the Amended Complaint.

171. All documents relating to the real estate construction and development project at 7-21 Erie Avenue, Worcester.

172. All documents reflecting the "six units under purchase and sale agreements" as alleged in paragraph 212 of the Amended Complaint.

173. All documents relating to the settlement referenced in paragraph 213 of the Amended Complaint.

174. All documents presented to Marcello Mallegni in connection with the request for discharges as alleged in paragraph 214 of the Amended Complaint.

175.  All documents reflecting any agreements between yourself and any of the Defendants relating to Erie Avenue Residential Realty Trust.

176.  All documents reflecting the $100,000 loan from Entrust Financial as alleged in paragraph 216 of the Amended Complaint. The request includes, but is not limited to, any commitment letters, term sheets, promissory notes, settlement statements, guarantees, mortgages, security agreements and loan agreements.

177.  All documents which substantiate the fact that Mr. Massad was an investor and part owner of Entrust Financial.

178.  All materials submitted to Commerce Bank in connection with any attempt to obtain credit, a mortgage or a loan relative to 425B Salisbury Street.

179.  All documents relating to the 425B Salisbury Street loan closing referenced in the Amended Complaint.

180.  All documents which substantiate the fact that Pamela Massad was present at the loan closing for 425B Salisbury Street.

181.  Telephone bills for any cell phone used by you on July 26, 2004.

182.  All documents reflecting communications between yourself and Commerce Bank relative to the 425B Salisbury Street loan closing referenced in the Amended Complaint.

183.  All documents which relate to the 425B Salisbury Street loan closing referenced in the Amended Complaint. This request includes, but is not limited to promissory notes, commitment letters, term sheet, guarantee, loan payoff letters, mortgages, loan agreement, settlement statements.

184.  Each of the documents specifically identified or referenced in paragraphs 232-276 of the Amended Complaint.

185.  All documents relating to the lawsuit referenced at paragraph 232 of the Amended Complaint. This request includes, but is not limited to the complaint, any answer, any discovery responses, any deposition transcripts, any court orders and any documents reflecting the outcome of the litigation.

186.  All documents relating to the lawsuit referenced at paragraph 237 of the Amended Complaint. This request includes, but is not limited to the complaint, any answer, any discovery responses, any deposition transcripts, any court orders and any documents reflecting the outcome of the litigation.

187. Copies of the telephone bills reflecting the telephone calls referenced in paragraphs 238, 240, 248, 255, 265, 267, 268, 270, 271 ......... of the Amended Complaint.

188. All documents relating to the bankruptcy filing referenced at paragraph 241 of the Amended Complaint. This request includes, but is not limited to the petition, any schedules, any motions, any court orders or decision and documents reflecting the outcome of the litigation.

189. All documents which substantiate the fact that Roy Bourgeois was acting as Mallegni or Massad's lawyer when he sought an attachment against Depietri as alleged at paragraph 242 of the Amended Complaint.

190. All documents which relate to the legal matter referenced in paragraph 242 of the Amended Complaint. This request includes, but is not limited to the complaint, any answer, any discovery responses, any deposition transcripts, any court orders, any injunction motions and any documents reflecting the outcome of the litigation.

191. All documents sufficient to identify the "two other individuals" who Attorney Bourgeois alleged told that the attachment [was] filed against Depietri in retaliation for Fiorillo's lawsuit against defendants Mallegni and LBM as alleged at paragraph 243 of the Amended Complaint.

192. All documents which memorialize Mallegni informing LaCourse to cease all work on projects owned by Fiorillo and Depietri as alleged in paragraph 244 of the Amended Complaint.

193. All documents reflecting the mechanics liens identified in paragraph 245-246 of the Amended Complaint.

194. All documents which reflect Marcello Mallegni directing Kenneth LaCourse to place a mechanic's lien on the Erie Avenue property as alleged in paragraphs 245-246 of the Amended Complaint.

195. All documents which evidence the submission of invoices for payment by Kenneth LaCourse or LaCourse Construction to Erie Avenue Residential Realty Trust.

196. All documents which evidence the payment of monies to Kenneth LaCourse or LaCourse Construction by Erie Avenue Residential Realty Trust.

197. All documents reflecting any bank accounts of Erie Avenue Residential Realty Trust. This request includes bank statements and cancelled checks.

198. All documents which substantiate the fact that Gamewell Realty sought to charge or assess "$300,000 in fraudulently inflated and usurious interest charges" as alleged in paragraph 247 of the Amended Complaint. This request includes, but is not limited to, all accountings, any documents which reflect this calculation, any documents which provide an accurate accounting and all documents reflecting communications between the parties reflecting the payoff figures.

199. All documents reflecting the Commerce Bank $3 million note and mortgage on the Chase building as alleged in paragraph 248 of the Amended Complaint. This request includes but is not limited to promissory notes, loan agreements, guarantees and mortgages.

200. The affidavit referenced at paragraph 254 of the Amended Complaint.

201. All documents which substantiate the fact that LBM "fraudulently claimed to be owed $493,656.38 on the Evergrass Note" as alleged in paragraph 263 of the Amended Complaint. This request includes, but is not limited to, all accountings, any documents which reflect this calculation, any documents which provide an accurate accounting and all documents reflecting communications between the parties reflecting the payoff figures.

202. All documents which substantiate the fact that the June, 2007 payoff of the Commerce Bank loan included "$19,500 in fraudulently assessed interest charges" as alleged in paragraph 272 of the Amended Complaint. This request includes, but is not limited to, all accountings, any documents which reflect this calculation, any documents which provide an accurate accounting and all documents reflecting communications between the parties reflecting the payoff figures.

203. All documents which relate to the two legal matters referenced in paragraph 276 of the Amended Complaint. This request includes, but is not limited to the complaint, any answer, any discovery responses, any deposition transcripts, any court orders, any injunction motions and any documents reflecting the outcome of the litigation.

204. All documents relating to the meeting referenced at paragraph 277 of the Amended Complaint.

205. All documents relating to James Tavano.

206. All documents provided to any expert witness in this matter.

207. All documents you intend to offer into evidence in the trial of this matter.

208. All documents identified in your initial disclosures.

209.   All documents submitted to law enforcement or any regulatory or administrative agency pertaining to any of the allegations set forth in the Amended Complaint.

210.   All documents reflecting the findings by any court, municipal body or administrative agency which determine that you have acted in an unfair, deceptive, fraudulent manner.

211.   All documents reflecting communications between any plaintiff and any defendant relating in any way to any of the loans or development projects set forth in the Amended Complaint.

212.   All documents reflecting non-privileged communications between and among the plaintiffs which relate in any way to any of the loans or development projects set forth in the Amended Complaint.

213.   Any and all telephone phone bills reflecting telephone calls made by you from 2001 to the present.

214.   For the time period 2004 to the present, all documents reflecting communications, including email communications with Bernard Laverty, Francis Fraine, Robert Bradley, John Gallagher, David Depietri, William Depietri, Robert Depietri, Charles Sanderson or William Abraham relating in any way to any of this lawsuit, the allegations set forth in the lawsuit, David Massad, Pamela Massad, Marcello Mallegni, Gamewell Realty, Wolfpen Financial, Michael Norris or any allegation set forth in any lawsuit initiated by any of the above identified individuals.

215.   For the time period 2004 to the present, all documents reflecting non-privileged communications, including email communications with any third party relating in any way to any of this lawsuit, the allegations set forth in the lawsuit, David Massad, Pamela Massad, Marcello Mallegni, Gamewell Realty, Wolfpen Financial, Michael Norris or any allegation set forth in any lawsuit initiated by any of the above identified individuals.

216.   All documents reflecting any non-privileged communications with any of your fellow plaintiffs relative to any matter referenced in the lawsuit.

Respectfully submitted,

DAVID G. MASSAD, PAMELA MASSAD
AND GAMEWELL REALTY, INC.

By their attorneys,

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document
was served upon the attorney of record for each other
party by mail/hand on _2/26/10_

/s/ David H. Rich
David H. Rich (BBO#634275)
Todd & Weld LLP
28 State Street, 31st Floor
Boston, MA  02109
(617) 720-2626
drich@toddweld.com

Date:   February 26, 2010

**Exhibit 3**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NICHOLAS J. FIORILLO, TRACY KROWEL, ROBERT DEPIETRI, JR., KIMBERLY DEPIETRI, SHREWSBURY STREET DEVELOPMENT COMPANY and ERIE AVENUE RESIDENTIAL REALTY TRUST<br><br>Plaintiffs,<br><br>v.<br><br>DAVID G. MASSAD, PAMELA MASSAD, MARCELLO MALLEGNI, MICHAEL NORRIS COMMERCE BANK AND TRUST COMPANY GAMEWELL REALTY, INC., LBM FINANCIAL, INC. AND WOLFPEN FINANCIAL, LLC<br><br>Defendants. | Civil Action No.<br>07-40015-FDS |

## DEFENDANT DAVID G. MASSAD, PAMELA A. MASSAD AND GAMEWELL REALTY, INC.'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS DIRECTED TO ERIE AVENUE RESIDENTIAL REALTY TRUST

Pursuant to Federal Rules of Civil Procedure 26 and 34, Defendants David Massad, Pamela Massad and Gamewell Realty, Inc. ("Defendants") hereby requests that Plaintiff Erie Avenue Residential Realty Trust ("EARRT") produce for inspection and copying the documents requested below. The production of documents requested herein shall take place at the offices of Plaintiff's counsel, Todd & Weld LLP, 28 State Street, 31st Floor, Boston, Massachusetts 02109 within thirty (30) days after service of this request.

## INSTRUCTIONS

1.     Defendants expressly incorporates herein the provisions of Fed. R. Civ. P. 26(b)(5) and 34(b).

2.      In producing documents in response to this request, EARRT is required to furnish all documents, including electronic media, in its possession, custody or control that are known or available to him regardless of whether those documents are possessed by EARRT, or by any agent, attorney, representative, affiliate or employee. EARRT must make a diligent search of its records and of other papers and materials in its possession or available to it or its attorneys or other representatives.

3.      When responding to this request for production of documents, EARRT is requested to respond in writing and state as to each of the requests:

(a)     that there are documents responsive to the request, and that they will be produced;

(b)     that there are documents responsive to the request, but that EARRT refuses to produce them because of a claim of privilege or for some other reason; or

(c)     that there are no documents responsive to the request.

4.      In the event that EARRT objects to any request set forth below on the basis of a contention that it is overbroad for any reason, please respond to that request as narrowed in such a way as to render it not overbroad and state the extent EARRT has narrowed that request for purposes of the response.

5.      In producing documents pursuant to this request, please indicate to which numbered request such document is responsive. If a document or any other item is produced pursuant to more than one request, please so designate.

6.      The following rules of construction apply to each of these discovery requests:

(a)     The terms "all" and "each" shall be construed as "all and each";

(b)     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope; and

(c)     The use of the singular form of any word includes the plural and vice versa.

(d)     These requests are to be construed broadly, and construction of their terms should be inclusive and in favor of providing an affirmative response.

7.      If any portion of any of these requests is objected to, the remaining nonobjectionable portions are to be responded to fully and completely.

8.     No document shall be withheld from discovery based on any claim or belief by you that such document already is in the possession of Plaintiff.

9.     Objections: If an objection is made to producing any of the documents requested on the grounds of attorney/client privilege, work product protection, or on any other basis, and such documents are withheld from production, please identify each such documents so withheld by:

(a)     the author, originator, or addresser;

(b)     the addressees;

(c)     all recipients of copies;

(d)     the date the document was prepared;

(e)     the nature of the document (i.e. letter, note, report, memorandum, etc.);

(f)     the present custodian and location of the document; and

(g)     a statement of the factual and legal reason(s) why the document is being withheld from production.

10.     Unavailability of Document: If you decline or are unable to produce a document on the ground that the document or any of its contents is no longer in existence, has been destroyed, or is otherwise unavailable, please provide the following information as to each such document:

(a)     the name of its author, originator, or addresser;

(b)     the name of each person to whom the original or a copy was addressed or delivered;

(c)     the name of each person known or reasonably believed by you to have present possession, custody, or control of the original and each copy thereof;

(d)     its date; and

(e)     a description of the circumstances causing or surrounding the destruction, loss or other unavailability of the document, including a description of the disposition made of each copy of the document, by whom it was made, the date or approximate date on which such disposition was made, and why such disposition was made.

11.     If no documents exist which are responsive to a request, please state that no documents exist.

12.     A request for a document shall be deemed to include a request for any and all transmittal sheets, cover letters, exhibits, enclosures, or attachments to the document, in addition to the document itself.

13.     These requests are continuing in nature and require supplemental response and production.

14.     Electronic emails and all documents originally generated in electronic form or maintained in electronic form should be produced in their native, electronic format, with search capabilities to the extent such capabilities are available.

## DEFINITIONS

As used herein, the words and phrases set out below shall have the following meanings:

1.     The term "Mr. Fiorillo" or "Nicholas Fiorillo" or "Fiorillo" means collectively Nicholas Fiorillo, any agent, representative, employee or corporate or legal entity for which Mr. Fiorillo possesses any interest.

2.     The term "Mr. Depietri" or "Robert Depietri" or "Depietri" means collectively Robert Depietri, any agent, representative, employee or corporate or legal entity for which Mr. Depietri possesses any interest.

3.     The term "Mrs. Depietri" means collectively Kimberly Depietri, any agent, representative, employee or corporate or legal entity for which Kimberly Depietri possesses any interest.

4.     The term "Ms. Krowel" means collectively Tracey Krowel, any agent, representative, employee or corporate or legal entity for which Ms. Krowel possesses any interest.

5.     The term "David Massad" means collectively David Massad, any agent, representative, employee or corporate or legal entity for which Mr. Massad possesses any interest.

6.     The term "Pamela Massad" means collectively Pamela Massad, any agent, representative, employee or corporate or legal entity for which Pamela Massad possesses any interest.

7.     The term "Mr. Mallegni" or "Marcello Mallegni" or "Mallegni" means collectively Marcello Mallegni, any agent, representative, employee or corporate or legal entity for which Marcello Mallegni possesses any interest

8.      The term "Mr. Norris" or "Michael Norris" or "Norris" means collectively Michael Norris, any agent, representative, employee or corporate or legal entity for which Michael Norris possesses any interest

9.      For each corporate or legal entity listed below, the reference to that corporate entity shall mean collectively that particular corporate or legal entity or any agent, representative, employee, accountant or attorney for that particular corporate or legal entity.

10.     The term "Document" and "Communication" expressly includes all emails, instant messages, text messages, voicemails, and other electronically stored information in its native, searchable form.

11.     A "representative" of a person means any officer, director, agent, employee, attorney, or other representative of such person.

12.     "You" and "your" shall mean or apply to Plaintiff Erie Avenue Residential Realty Trust, its agents, affiliates, owners, beneficiaries, trustees, managers, officers, directors, employees and agents.

13.     "Amended Complaint" shall mean the Amended Complaint filed in this matter by the Plaintiffs and dated November 20, 2007 (Docket No. 29).

## REQUESTS

1.      All documents which reflect Pamela Massad's participation or involvement in a criminal conspiracy.

2.      All documents which reflect Gamewell Realty's participation or involvement in a criminal conspiracy.

3.      All documents which reflect David Massad's participation or involvement in a criminal conspiracy.

4.      All documents which prove or evidence the existence of an association-in-fact RICO enterprise as alleged in the Amended Complaint.

5.      All corporate, formational and other documents reflecting the ownership structure of any of the following entities:

- 219 Forest Street Realty Trust
- 219 Forest Street, LLC
- 201 Forest Street Realty Trust
- 201 Forest Street, LLC
- Old Centre Village Realty Trust
- Lyman Development, LLC
- Lyman Development Realty Trust

- 230 Maple Street LLC
- 230 Maple Street Realty Trust
- 57 East Main Street, LLC
- 57 East Main Street Realty Trust
- 65 Boston Post Road Realty Trust
- 65 BPW LLC

This request, includes, but is not limited to declaration of trusts, operating agreements, documents reflecting ownership or beneficial interests in the entity or trust.

6. For the time period 2000 to the present, the corporate tax returns for each of the entities identified above. This request includes, but is not limited to all tax filings, forms, schedules and supplementary information.

7. For the time period 2000 to the present, the corporate tax returns for Shrewsbury Street Development Corporation. This request includes, but is not limited to all tax filings, forms, schedules and supplementary information,

8. For the time period 2000 to the present, the corporate tax returns for Erie Avenue Residential Realty Trust. This request includes, but is not limited to all tax filings, forms, schedules and supplementary information.

9. For the time period 2000 to the present, all federal and state tax returns of Nicholas Fiorillo. This request includes, but is not limited to all tax filings, forms, schedules and supplementary information.

10. For the time period 2000 to the present, all federal and state tax returns of Robert Depietri. This request includes, but is not limited to all tax filings, forms, schedules and supplementary information.

11. For the time period 2000 to the present, all federal and state tax returns of Tracey Krowel. This request includes, but is not limited to all tax filings, forms, schedules and supplementary information.

12. For the time period 2000 to the present, all federal and state tax returns of Kimberly Depietri. This request includes, but is not limited to all tax filings, forms, schedules and supplementary information.

13. For the time period 2000 to the present, documents sufficient to identify any accountant who has performed services on your behalf.

14. All documents reflecting any damages you allege to have suffered in this case.

15. All documents reflecting any acts of mail or wire fraud which you contend were committed against you by Pamela Massad, David Massad or Gamewell Realty.

16. All documents reflecting any acts of bank fraud which you contend were committed against you by Pamela Massad, David Massad or Gamewell Realty.

17. All documents reflecting any acts of bankruptcy fraud which you contend were committed against you by Pamela Massad, David Massad or Gamewell Realty.

18. All documents reflecting any acts of money laundering which you contend were committed against you by Pamela Massad, David Massad or Gamewell Realty.

19. All documents reflecting any acts of obstruction of justice which you contend were committed against you by Pamela Massad, David Massad or Gamewell Realty.

20. All documents reflecting any acts of loan sharking which you contend were committed against you by Pamela Massad, David Massad or Gamewell Realty.

21. All documents reflecting any acts of extortion which you contend were committed against you by Pamela Massad, David Massad or Gamewell Realty.

22. All documents reflecting any violation of the Fair Housing Act which you contend were committed against you by Pamela Massad, David Massad or Gamewell Realty.

23. All documents reflecting any violation of the Truth in Lending Act which you contend were committed against you by Pamela Massad, David Massad or Gamewell Realty.

24. All documents reflecting any violation of the Real Estate Settlement Procedures Act which you contend were committed against you by Pamela Massad, David Massad or Gamewell Realty.

25. All documents reflecting any violation of the Equal Credit Opportunity Act which you contend were committed against you by Pamela Massad, David Massad or Gamewell Realty.

26. All documents reflecting any acts of mail or wire fraud which you contend were committed against you by any party to this lawsuit.

27. All documents reflecting any acts of bank fraud which you contend were committed against you by any party to this lawsuit.

28. All documents reflecting any acts of bankruptcy fraud which you contend were committed against you by any party to this lawsuit.

29. All documents reflecting any acts of money laundering which you contend were committed against you by any party to this lawsuit.

30. All documents reflecting any acts of obstruction of justice which you contend were committed against you by any party to this lawsuit.

31. All documents reflecting any acts of loan sharking which you contend were committed against you by any party to this lawsuit.

32. All documents reflecting any acts of extortion which you contend were committed against you by any party to this lawsuit.

33. All documents reflecting any violation of the Fair Housing Act which you contend were committed against you by any party to this lawsuit.

34. All documents reflecting any violation of the Truth in Lending Act which you contend were committed against you by any party to this lawsuit.

35. All documents reflecting any violation of the Real Estate Settlement Procedures Act which you contend were committed against you by any party to this lawsuit.

36. All documents reflecting any violation of the Equal Credit Opportunity Act which you contend were committed against you by any party to this lawsuit.

37. All documents memorializing any threats made by any of the Defendants at any time.

38. All documents reflecting Nicholas Fiorillo, individually, as a borrower of any loan made by any of the Defendants in this case.

39. All documents reflecting Robert Depietri, individually, as a borrower of any loan made by any of the Defendants in this case.

40. All documents reflecting Tracey Krowel, individually, as a borrower of any loan made by any of the Defendants in this case.

41. All documents reflecting Kimberly Depietri, individually, as a borrower of any loan made by any of the Defendants in this case.

42. All documents reflecting Erie Avenue Residential Realty Trust, as a borrower of any loan made by any of the Defendants in this case.

43. All documents reflecting Shrewsbury Street Development Company as a borrower of any loan made by any of the Defendants in this case.

44. All documents relating to any proposed, contemplated or actual financing arrangement relative to 267 Shrewsbury Street, Worcester, MA.

45.  All documents relating to any proposed, contemplated or actual development of 267 Shrewsbury Street, Worcester, MA.

46.  All documents reflecting any contracts, agreement or understandings relative to 267 Shrewsbury Street.

47.  All documents relating to the provision of a deposit for 267 Shrewsbury Street as alleged in paragraph 47 of the Amended Complaint.

48.  Any and all commitment letters, term sheets, promissory notes, mortgages, guarantees, settlement statements or loan agreements relative to 267 Shrewsbury Street.

49.  All documents reflecting the $600,000 offer to purchase the Airline Lewis property referenced in Paragraph 54 of the Amended Complaint.

50.  All documents reflecting any loan payoff calculations provided by Pamela Massad, David Massad or Gamewell Realty relating to 267 Shrewsbury Street.

51.  All documents reflecting any loan payoff calculations provided by Pamela Massad, David Massad or Gamewell Realty relating to any property or loan referenced in the Amended Complaint.

52.  All documents reflecting any loan payoff calculations provided by any defendant relating to any property or loan referenced in the Amended Complaint.

53.  All documents reflecting the $800,000 offer to purchase the Airline Lewis property referenced in Paragraph 55 of the Amended Complaint.

54.  All documents reflecting the $760,000 offer to purchase the Airline Lewis property referenced in Paragraph 56 of the Amended Complaint.

55.  All documents reflecting any communications with "a national fitness center" relative to the Airline Lewis Building as referenced in Paragraph 58 of the Amended Complaint.

56.  All documents reflecting any communications with Universal Architects or CFS Engineering relative to the Airline Lewis Building as referenced in Paragraph 58 of the Amended Complaint.

57.  All documents reflecting any negotiations with an adjacent landowner relative to the Airline Lewis Building as referenced in Paragraph 58 of the Amended Complaint.

58.  All documents reflecting the expenditure of any monies relative to the development of the Airline Lewis property.

59. All documents reflecting the "other outstanding loans with [ ] various other lending companies" as referenced in Paragraph 61 of the Amended Complaint. This request includes, but is not limited to promissory notes, mortgages, security agreements, demand letters, term sheets, commitment letters and other documents relating to the loan.

60. All documents reflecting any lawsuits or legal proceedings relative to 267 Shrewsbury Street. This request includes, but is not limited to complaints, answers, discovery responses, motions, deposition transcripts, court pleadings, settlement agreements and judgments or dismissal papers.

61. All documents relating to the 219 Forest Street loan between Wolfpen and 219 Forest as alleged in the Amended Complaint.

62. All documents reflecting the $200,000 personal loan made by Depietri to 219 Forest as alleged in paragraph 63 of the Amended Complaint.

63. All documents which demonstrate any ownership interest held by you in 219 Forest Street, LLC or 219 Forest Street Realty Trust.

64. All documents reflecting any actual, proposed or contemplated loan agreement concerning 219 Forest. This request includes, but is not limited to loan agreements, promissory notes, mortgages, guarantees, settlement statements, security agreements, term sheets, commitment letters or other documents reflecting any loan terms.

65. All documents reflecting the personal payment of funds to any of the Defendants for any reason.

66. All documents reflecting the personal investment of funds into any of the legal entities referenced in the Amended Complaint.

67. All documents reflecting the personal payment of $202,271 by Depietri to LBM Financial as referenced in paragraph 69 of the Amended Complaint.

68. All documents reflecting the commitment provided to Depietri by First Essex Bank as referenced in paragraph 71 of the Amended Complaint.

69. All documents which demonstrate that Massad directed Mallegni to refuse to the First Essex Bank proposal as alleged at paragraph 72 of the Amended Complaint.

70. All documents reflecting the "withdrawal" by Commerce Bank of the loan commitment as alleged in paragraph 73 of the Amended Complaint.

71.    All documents received from Commerce Bank or provided to Commerce Bank relative to 219 Forest at any time.

72.    All documents reflecting the payment by 219 Forest of any outstanding loans referenced in the Amended Complaint.

73.    All documents which substantiate the fact that Mallegni "instructed defendant Norris to break his lease with the Boston Post Road Trust and move into an office building owned by Mallegni" as alleged in paragraph 78 of the Amended Complaint.

74.    All documents reflecting the January 28, 2004 letter from Mallegni and LBM Financial to 219 Forest as referenced in paragraph 79 of the Amended Complaint.

75.    The January 30, 2004 letter referenced in paragraph 80 of the Amended Complaint.

76.    All documents which reflect the fact that Mr. Norris "breached his lease" as alleged in paragraph 81 of the Amended Complaint. This request includes, but is not limited to a copy of the lease and any amendments and any notices concerning defaults under the lease.

77.    All documents which reflect defendant Mallegni and LBM Financial assessing the December note a default rate of 20% plus interest plus one point per month as alleged in paragraph 82 of the Amended Complaint. This request includes, but is not limited to, a copy of the December note, any demand notices, any accountings and any documents reflecting the charging of interest.

78.    All documents which reflect the "financing commitments" obtained by Depietri as alleged in paragraph 83 of the Amended Complaint.

79.    All documents which reflect "approximately $5,000,000 of pre-sales of the condominiums" as alleged in paragraph 83 of the Amended Complaint. This request includes, but is not limited to, copies of any purchase and sale agreements, offers to purchase, copies of deposit checks and any other evidence identifying pre-sales.

80.    All documents reflecting any requests for confirmation of payoff amounts due under any of the loans at issue in the Amended Complaint.

81.    All documents reflecting responses by any of the defendants to requests for confirmation of payoff amounts for any loan at issue in the Amended Complaint.

82.    All documents which reflect the refusal by any defendant to provide confirmation of any payoff amount for any loan at issue in the Amended Complaint.

83. All documents reflecting the pledge by Mallengi of "the December Notes and mortgages on 219 Forest and 201 Forest to DanversBank as collateral for an obligation of LBM Financial relating to property in Manchester, New Hampshire in which defendants Mallegni and Massad held an interest" as alleged in paragraph 88 of the Amended Complaint.

84. All documents which identify the "property in Manchester, New Hampshire" referenced in paragraph 88 of the Amended Complaint and all documents which demonstrate that Massad "held an interest" in this property.

85. All documents which demonstrate that Mallegni did not have authority from investors to "pledge the December note to DanversBank" as alleged in paragraph 88 of the Amended Complaint.

86. All documents which confirm that Mallegni did not inform DanversBank of the matters listed in paragraph 88 of the Amended Complaint.

87. The loan participation agreement referenced in paragraph 88 of the Amended Complaint.

88. All documents which reflect DanversBank assigning the December Note and Mortgage back to LBM in exchange for a second mortgage on 171 Locke Drive as alleged in paragraph 89 of the Amended Complaint.

89. All documents reflecting the February 20, 2007 demand notices and the April 18, 2007 Notice of Intent to foreclose referenced in paragraph 90 of the Amended Complaint.

90. All documents reflecting the purchase and sale agreement between 219 Forest and Forekicks II as alleged in paragraph 91 of the Amended Complaint.

91. All documents which reflect Mallegni and Norris contacting representatives of Forekicks II and discouraging them from purchasing the property as alleged in paragraph 91 of the Amended Complaint.

92. All documents reflecting "two other financing commitments" referenced in paragraph 93 of the Amended Complaint.

93. Any and all calculations which demonstrate that LBM charged usurious and fraudulently inflated interest payments for any of the loan identified in the Amended Complaint.

94. All documents relating to 249 Lincoln Street.

95.    All documents relating to the loan pertaining to 249 Lincoln Street, Worcester. This request includes any term sheet, commitment letter, promissory note, mortgages, loan agreements.

96.    All documents relating the $20,000 in deposits and soft money invested in 249 Lincoln Street property as alleged in paragraph 99 of the Amended Complaint. This request includes, but is not limited to cancelled checks, invoices, purchase and sale agreements, and bills.

97.    All documents reflecting communications between yourself and the sellers of 249 Lincoln Street identified in paragraph 99 of the Amended Complaint.

98.    All documents relating to the granting to Marcello Mallegni of a 25% ownership interest in the building located at 157 Shrewsbury Street.

99.    All documents reflecting the repayment of any monies to LBM Financial relating to the May 3, 2005 $550,000 loan referenced in paragraph 100 of the Amended Complaint.

100.   All documents which substantiate the "loan to refinance 249 Lincoln Street" as alleged in paragraph 102 of the Amended Complaint. This request includes, but is not limited to, any term sheets, letters of intent or commitment letters.

101.   All documents which reflect communications between yourself and any of the defendants relating to the 249 Lincoln Street loan. This request includes, but is not limited to notices of default, notices of intent to foreclose, demands to payoff figures and payoff amounts.

102.   All documents which substantiate the claim that the loan calculation for the 249 Lincoln Street loan is "fraudulently inflated" as alleged at paragraph 106 of the Amended Complaint.

103.   All documents reflecting any efforts by Chase Building Associates II Limited Partnership to refinance its mortgage on the commercial property located at 44 Front Street, Worcester, Massachusetts.

104.   The Commerce Bank loan commitment identified at Paragraph 108 of the Amended Complaint.

105.   The HUD-1 Settlement Statement referenced in paragraph 110 of the Amended Complaint.

106.   All documents reflecting the rewriting of the "CBA loan" as alleged in paragraph 111 of the Amended Complaint.

107.   All documents relating to the Old Centre Village Realty Trust loan as alleged at paragraph 112 of the Amended Complaint. This request includes, but is not limited to, a term sheet, commitment letter, loan agreement, promissory notes, mortgages, settlement statements and guarantees.

108.   All documents relating to the securing of permits by Old Centre Village Realty Trust as alleged at paragraph 113 of the Amended Complaint.

109.   The "settlement statement" referenced at paragraph 114 of the Amended Complaint.

110.   Any "settlement statement" or HUD settlement statement which you contend contains improper, fraudulent, illegal or untruthful entries.

111.   All documents which substantiate the fact that "Old Centre Village Trust paid defendant LBM Financial over $94,000 in fraudulent and usurious interest charges" as alleged in paragraph 117 of the Amended Complaint. This request includes, but is not limited to, all accountings, any documents which reflect this calculation, any documents which provide an accurate accounting and all documents reflecting communications between the parties reflecting the payoff figures.

112.   All documents concerning the Lyman Development Loan as alleged at paragraph 119 of the Amended Complaint. This request includes, but is not limited to term sheets, commitment letters, promissory notes, settlement statements, guarantees, mortgages, loan agreements and communications between the parties concerning the loan.

113.   All documents concerning the first mortgage in place on August 16, 2001 at 44 Lyman Street, Northborough, MA. This request includes but is not limited to any promissory notes securing the mortgage, the mortgage, any guarantees between the first mortgage holder and any obligor and any communications between the first mortgage holder and Lyman Development.

114.   All documents relating to the lawsuit referenced at paragraph 121 of the Amended Complaint. This request includes, but is not limited to pleadings, deposition transcripts, the complaint, any settlement agreement, interrogatory answers and any sworn statements made in connection with the lawsuit.

115.   All documents which substantiate the fact that Lyman Development paid defendant LBM Financial $164,321.97 in fraudulently inflated interest" as alleged in paragraph 126 of the Amended Complaint. This request includes, but is not limited to, all accountings, any documents which reflect this calculation, any documents which provide an accurate accounting and all documents reflecting communications between the parties reflecting the payoff figures.

116.   All documents relating to the 230 Maple Street loans referenced in paragraph 132 of the Amended Complaint. This request includes, but is not limited all documents relating to the Milford National Bank loan documents as well as the LBM Financial loan documents. These request includes, but is not limited to, term sheets, commitment letters, promissory notes, guarantees, mortgages, loan agreements, settlement statements and communications between the lenders and the borrower.

117.   All documents relating to the "pending sale of the property" referenced in paragraph 134 of the Amended Complaint.

118.   All documents which substantiate the fact that 230 Maple Street Trust was required to pay "fraudulently inflated interest charges" as alleged in paragraph 135 of the Amended Complaint. This request includes, but is not limited to, all accountings, any documents which reflect this calculation, any documents which provide an accurate accounting and all documents reflecting communications between the parties reflecting the payoff figures.

119.   All documents relating to the sale by 230 Maple Street Trust to Bluefin Properties. This request includes, but is not any purchase and sale agreement and any settlement statement or other closing document.

120.   The March 31, 2004 letter referenced at paragraph 140 of the Amended Complaint.

121.   All documents relating to the 88 Shrewsbury Street loan referenced at paragraph 141 of the Amended Complaint.

122.   All documents relating to Shrewsbury Street Investment LLC.

123.   All documents reflecting the payment of monies by 88 Shrewsbury Street Investment LLC to LBM Financial as alleged in paragraph 145 of the Amended Complaint.

124.   All documents relating to the sale of 88 Shrewsbury Street. This request includes, but is not limited to settlement statements, any purchase and sale agreement or other closing document.

125.   The purchase and sale agreement to purchase the former Manzi's Funeral Home and four adjacent parcels of land located at 175-181 Shrewsbury Street, Worcester, MA for $1.2 million" as alleged at paragraph 148 of the Amended Complaint.

126.   All documents reflecting the "commitment" for $1,500,000 from defendant LBM Financial as alleged at paragraph 150 of the Amended Complaint.

127. All documents reflecting Fiorillo's assignment of his ownership interest in the Manzi parcels to Mallegni and Massad as alleged at paragraph 150 of the Amended Complaint.

128. All documents which would substantiate the fact that Fiorillo owns any interest in Shrewsbury Street General Investment LLC.

129. All documents reflecting any investment made by any of the Plaintiffs in Shrewsbury Street General Investment LLC.

130. All documents reflecting any "public statement" that Fiorillo was a 50% partner in the project.

131. All documents reflecting the substantial investment of "time and money in preparing the development plans for a 38,000 square foot mixed use retail/office/condo project that fully capitalized on the site" as alleged at paragraph 156 of the Amended Complaint. This request includes, but is not limited to cancelled checks, invoices, bills or any material substantiating the work and investment of money.

132. All documents which substantiate the fact that the "proposed development project" referenced in paragraph 156 of the Amended Complaint "had a projected 'as finished' value of over $12 million." This request includes, but is not limited to appraisals, pro forms and valuations.

133. All documents reflecting the listing for sale of one of the "Manzi parcels" for a sale price of $2.2 million as alleged at paragraph 158 of Amended Complaint.

134. All documents reflecting the actual sale of any of the "Manzi parcels" as that term is used in the Amended Complaint at any time.

135. All documents reflecting the 157 Shrewsbury Street loan as alleged in paragraphs 165 of the Amended Complaint. This request includes any promissory notes, commitment letters, term sheets, settlement statements, mortgages, loan agreements or guarantees.

136. All documents reflecting the repayment of any loan made by LBM Financial relating to 157 Shrewsbury Street.

137. All documents reflecting any interaction with Commerce Bank relative to any possible loan for 157 Shrewsbury Street.

138. All documents relating to 157 Shrewsbury Street, Worcester. This request includes any purchase and sale agreements, any documents reflecting any down payments or deposits, any documents reflecting the expenditure of any monies.

139.    All documents relating to any financing commitment or other documentation
        relating to Webster First Federal Credit Union as alleged in paragraph 167 of the
        Amended Complaint.

140.    The pay-off letter referenced in paragraph 168 of the Amended Complaint.

141.    All documents which substantiate the fact that LBM Financial sought to charge
        "$135,000 in fraudulently inflated interest" as alleged in paragraph 168 of the
        Amended Complaint.  This request includes, but is not limited to, all accountings,
        any documents which reflect this calculation, any documents which provide an
        accurate accounting and all documents reflecting communications between the
        parties reflecting the payoff figures.

142.    Please set forth in full and complete detail all documents relating to the Stafford
        Hill Estates purchase as alleged at paragraphs 170-180 of the Amended
        Complaint.  This request includes, but is not limited to any term sheets,
        commitment letters, purchase and sale agreements,

143.    All documents reflecting the $50,000 loan referenced at paragraph 170 of the
        Amended Complaint.  This request includes any promissory notes, mortgages,
        guarantees and any communications with the lender.

144.    All documents reflecting the purchase and sale agreement reflected in paragraph
        170 of the Amended Complaint.

145.    All documents submitted to Commerce Bank in connection with the Stafford Hill
        Estates purchase as alleged in paragraph 171 of the Amended Complaint.

146.    All documents reflecting the purchase and sale agreement with Toll Brothers
        referenced in paragraph 173.

147.    All communications with the Toll Brothers concerning the Stafford Hill Estates
        purchase.

148.    All documents reflecting the commitment letter referenced in paragraph 176 of
        the Amended Complaint.

149.    Any loan participation agreement between Massad and LBM Financial.

150.    Any loan participation agreement between LBM and any of its investors.

151.    All documents which reflect Shrewsbury Street Development Company's
        corporate existence.  This request includes, but is not limited to shareholder
        meetings, articles of organization, corporate votes, annual reports, stock
        certificates, bylaws, and any amendments thereto.

152. All documents which reflect Erie Avenue Residential Realty Trust's legal existence. This request includes, but is not limited to documents reflecting the creation of the trust, and Declaration of Trust, documents reflecting the beneficiaries of the trust at any time and any schedules of beneficiaries created at any time.

153. All documents relating to the Evergrass loan referenced in paragraph 181 of the Amended Complaint. This request includes but is not limited to term sheets, commitment letters, loan agreements, promissory notes, security agreements, mortgages, guarantees and settlement statements.

154. All documents which substantiate the writing of a $23,334.36 unauthorized check out of the loan proceeds made payable to Mallegni as alleged in paragraph 183 of the Amended Complaint. Include in your response, any documents which demonstrate that the check was unauthorized.

155. All documents relating to the Evergrass loan referenced in paragraph 186 of the Amended Complaint. This request includes but is not limited to term sheets, commitment letters, loan agreements, promissory notes, security agreements, mortgages, guarantees and settlement statements.

156. All documents which substantiate the fact that Evergrass "overpaid defendant LBM Financial approximately $95,000" as alleged in paragraph 187 of the Amended Complaint. This request includes, but is not limited to, all accountings, any documents which reflect this calculation, any documents which provide an accurate accounting and all documents reflecting communications between the parties reflecting the payoff figures.

157. All documents evidencing payments made by Evergrass to LBM at any time.

158. All documents reflecting "the substantial deposit that [Depietri] had put down on the property as alleged in paragraph 190 of the Amended Complaint.

159. All documents relating to the LBM Financial loan to East Main Street Trust referenced at paragraph 191 of the Amended Complaint. The request includes, but is not limited to, any commitment letters, term sheets, promissory notes, settlement statements, guarantees, mortgages, security agreements, loan agreements and all documents reflecting the provision of a 25% non-voting ownership to Mallegni.

160. All documents reflecting Depietri's $325,000 loan to East Main Street Trust. This request includes all loan documents, all cancelled checks and any documentation memorializing the receipt of these funds by East Main Street Trust.

161. All documents reflecting any payments made by East Main Street Trust to LBM Financial or Mallegni.

162. All documents relating to the loan closing referenced in paragraph 193 of the Amended Complaint. The request includes, but is not limited to, any commitment letters, term sheets, promissory notes, settlement statements, guarantees, mortgages, security agreements, loan agreements and all documents reflecting a priority cash flow distribution.

163. The March 31, 2004 fax referenced in paragraph 197 of the Amended Complaint.

164. All communications between Depietri and any of the Defendants relating to the 57 East Main Street Realty Trust.

165. The letters referenced in paragraphs 199-201 of the Amended Complaint.

166. All documents which substantiate the fact that 57 East Main Street Realty Trust paid "almost $750,000 in usurious and fraudulently inflated interest charges" as alleged in paragraph 202 of the Amended Complaint. This request includes, but is not limited to, all accountings, any documents which reflect this calculation, any documents which provide an accurate accounting and all documents reflecting communications between the parties reflecting the payoff figures.

167. All documents reflecting the formation of the Erie Avenue Residential Realty Trust.

168. All documents relating to the Erie Avenue Residential Realty Trust loan referenced at paragraph 206 of the Amended Complaint. The request includes, but is not limited to, any commitment letters, term sheets, promissory notes, settlement statements, guarantees, mortgages, security agreements and loan agreements.

169. All documents which substantiate the claim that Mallegni instructed LaCourse Construction not to pull the necessary permits for the project as alleged in paragraph 211 of the Amended Complaint.

170. All documents reflecting communications between yourself and LaCourse Construction relative to any development project or loan referenced in the Amended Complaint.

171. All documents relating to the real estate construction and development project at 7-21 Erie Avenue, Worcester.

172. All documents reflecting the "six units under purchase and sale agreements" as alleged in paragraph 212 of the Amended Complaint.

173. All documents relating to the settlement referenced in paragraph 213 of the Amended Complaint.

174. All documents presented to Marcello Mallegni in connection with the request for discharges as alleged in paragraph 214 of the Amended Complaint.

175. All documents reflecting any agreements between yourself and any of the Defendants relating to Erie Avenue Residential Realty Trust.

176. All documents reflecting the $100,000 loan from Entrust Financial as alleged in paragraph 216 of the Amended Complaint. The request includes, but is not limited to, any commitment letters, term sheets, promissory notes, settlement statements, guarantees, mortgages, security agreements and loan agreements.

177. All documents which substantiate the fact that Mr. Massad was an investor and part owner of Entrust Financial.

178. All materials submitted to Commerce Bank in connection with any attempt to obtain credit, a mortgage or a loan relative to 425B Salisbury Street.

179. All documents relating to the 425B Salisbury Street loan closing referenced in the Amended Complaint.

180. All documents which substantiate the fact that Pamela Massad was present at the loan closing for 425B Salisbury Street.

181. Telephone bills for any cell phone used by you on July 26, 2004.

182. All documents reflecting communications between yourself and Commerce Bank relative to the 425B Salisbury Street loan closing referenced in the Amended Complaint.

183. All documents which relate to the 425B Salisbury Street loan closing referenced in the Amended Complaint. This request includes, but is not limited to promissory notes, commitment letters, term sheet, guarantee, loan payoff letters, mortgages, loan agreement, settlement statements.

184. Each of the documents specifically identified or referenced in paragraphs 232-276 of the Amended Complaint.

185. All documents relating to the lawsuit referenced at paragraph 232 of the Amended Complaint. This request includes, but is not limited to the complaint, any answer, any discovery responses, any deposition transcripts, any court orders and any documents reflecting the outcome of the litigation.

186. All documents relating to the lawsuit referenced at paragraph 237 of the Amended Complaint. This request includes, but is not limited to the complaint, any answer,

any discovery responses, any deposition transcripts, any court orders and any documents reflecting the outcome of the litigation.

187.  Copies of the telephone bills reflecting the telephone calls referenced in paragraphs 238, 240, 248, 255, 265, 267, 268, 270, 271......... of the Amended Complaint.

188.  All documents relating to the bankruptcy filing referenced at paragraph 241 of the Amended Complaint. This request includes, but is not limited to the petition, any schedules, any motions, any court orders or decision and documents reflecting the outcome of the litigation.

189.  All documents which substantiate the fact that Roy Bourgeois was acting as Mallegni or Massad's lawyer when he sought an attachment against Depietri as alleged at paragraph 242 of the Amended Complaint.

190.  All documents which relate to the legal matter referenced in paragraph 242 of the Amended Complaint. This request includes, but is not limited to the complaint, any answer, any discovery responses, any deposition transcripts, any court orders, any injunction motions and any documents reflecting the outcome of the litigation.

191.  All documents sufficient to identify the "two other individuals" who Attorney Bourgeois alleged told that the attachment [was] filed against Depietri in retaliation for Fiorillo's lawsuit against defendants Mallegni and LBM as alleged at paragraph 243 of the Amended Complaint.

192.  All documents which memorialize Mallegni informing LaCourse to cease all work on projects owned by Fiorillo and Depietri as alleged in paragraph 244 of the Amended Complaint.

193.  All documents reflecting the mechanics liens identified in paragraph 245-246 of the Amended Complaint.

194.  All documents which reflect Marcello Mallegni directing Kenneth LaCourse to place a mechanic's lien on the Erie Avenue property as alleged in paragraphs 245-246 of the Amended Complaint.

195.  All documents which evidence the submission of invoices for payment by Kenneth LaCourse or LaCourse Construction to Erie Avenue Residential Realty Trust.

196.  All documents which evidence the payment of monies to Kenneth LaCourse or LaCourse Construction by Erie Avenue Residential Realty Trust.

197.    All documents reflecting any bank accounts of Erie Avenue Residential Realty Trust. This request includes bank statements and cancelled checks.

198.    All documents which substantiate the fact that Gamewell Realty sought to charge or assess "$300,000 in fraudulently inflated and usurious interest charges" as alleged in paragraph 247 of the Amended Complaint. This request includes, but is not limited to, all accountings, any documents which reflect this calculation, any documents which provide an accurate accounting and all documents reflecting communications between the parties reflecting the payoff figures.

199.    All documents reflecting the Commerce Bank $3 million note and mortgage on the Chase building as alleged in paragraph 248 of the Amended Complaint. This request includes but is not limited to promissory notes, loan agreements, guarantees and mortgages.

200.    The affidavit referenced at paragraph 254 of the Amended Complaint.

201.    All documents which substantiate the fact that LBM "fraudulently claimed to be owed $493,656.38 on the Evergrass Note" as alleged in paragraph 263 of the Amended Complaint. This request includes, but is not limited to, all accountings, any documents which reflect this calculation, any documents which provide an accurate accounting and all documents reflecting communications between the parties reflecting the payoff figures.

202.    All documents which substantiate the fact that the June, 2007 payoff of the Commerce Bank loan included "$19,500 in fraudulently assessed interest charges" as alleged in paragraph 272 of the Amended Complaint. This request includes, but is not limited to, all accountings, any documents which reflect this calculation, any documents which provide an accurate accounting and all documents reflecting communications between the parties reflecting the payoff figures.

203.    All documents which relate to the two legal matters referenced in paragraph 276 of the Amended Complaint. This request includes, but is not limited to the complaint, any answer, any discovery responses, any deposition transcripts, any court orders, any injunction motions and any documents reflecting the outcome of the litigation.

204.    All documents relating to the meeting referenced at paragraph 277 of the Amended Complaint.

205.    All documents relating to James Tavano.

206.    All documents provided to any expert witness in this matter.

207.    All documents you intend to offer into evidence in the trial of this matter.

208.   All documents identified in your initial disclosures.

209.   All documents submitted to law enforcement or any regulatory or administrative agency pertaining to any of the allegations set forth in the Amended Complaint.

210.   All documents reflecting the findings by any court, municipal body or administrative agency which determine that you have acted in an unfair, deceptive, fraudulent manner.

211.   All documents reflecting communications between any plaintiff and any defendant relating in any way to any of the loans or development projects set forth in the Amended Complaint.

212.   All documents reflecting non-privileged communications between and among the plaintiffs which relate in any way to any of the loans or development projects set forth in the Amended Complaint.

213.   Any and all telephone phone bills reflecting telephone calls made by you from 2001 to the present.

214.   For the time period 2004 to the present, all documents reflecting communications, including email communications with Bernard Laverty, Francis Fraine, Robert Bradley, John Gallagher, David Depietri, William Depietri, Robert Depietri, Charles Sanderson or William Abraham relating in any way to any of this lawsuit, the allegations set forth in the lawsuit, David Massad, Pamela Massad, Marcello Mallegni, Gamewell Realty, Wolfpen Financial, Michael Norris or any allegation set forth in any lawsuit initiated by any of the above identified individuals.

215.   For the time period 2004 to the present, all documents reflecting non-privileged communications, including email communications with any third party relating in any way to any of this lawsuit, the allegations set forth in the lawsuit, David Massad, Pamela Massad, Marcello Mallegni, Gamewell Realty, Wolfpen Financial, Michael Norris or any allegation set forth in any lawsuit initiated by any of the above identified individuals.

216.   All documents reflecting any non-privileged communications with any of your fellow plaintiffs relative to any matter referenced in the lawsuit.

Respectfully submitted,

DAVID G. MASSAD, PAMELA MASSAD
AND GAMEWELL REALTY, INC.

By their attorneys,

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document
was served upon the attorney of record for each other
party by mail and on 2/26/10

/s/ David H. Rich
David H. Rich (BBO#634275)
Todd & Weld LLP
28 State Street, 31st Floor
Boston, MA  02109
(617) 720-2626
drich@toddweld.com

Date:   February 26, 2010